LOREN D. ANDERSON, Plaintiff-Appellant, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant-Appellee.

(No. 58343; ▮▮▮▮▮▮▮▮▮▮▮▮

First District (5th Division)—January 31, 1974.

Jeffrey Lawrence, of Downs, Zeitlin, Haddix & Schwab, and George E. Faber, both of Chicago, for appellant.

Bertram M. Long, of Mayer, Brown & Platt, of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This appeal is from a judgment in favor of defendant denying "Incentive Compensation" to plaintiff which he claims is due him from defendant, his former employer. The trial court also denied attorney's fees to plaintiff which were sought on the authority of Ill. Rev. Stat. 1971, ch. 13, par. 13.

Plaintiff began his job as a group insurance representative for defendant in June, 1970. He was to sell and service new and existing group life, health and pension insurance accounts. According to his own testimony, plaintiff earned a salary of approximately $10,600 a year and was entitled to additional compensation under an "Incentive Compensation Program" which had been put into effect by defendant and be-

came a part of plaintiff's employment contract. Plaintiff having resigned his position effective November 1, 1971, claims incentive compensation for the first ten months of 1971.

The "Incentive Compensation Program" provides that group representatives of a certain salary grade (such as plaintiff's) are eligible for incentive compensation based on individual performance during the calendar year. The program specifically provides that such compensation will be computed on an annual calendar basis, taking into consideration several rather complicated factors which are not in dispute and are not determinative of the result in this case.

The sole issue stems from an additional clause in the program entitled "Termination of Active Employment." It provides:

"If an individual leaves the full-time salaried employ of the Society [defendant] prior to December 31 of any year, except for reasons of death, retirement, military duty or to enter into agent's contract with the Society or one of the Society's General Agents, he will not be eligible for incentive compensation in that year."

While the parties differ slightly as to plaintiff's computation of the incentive compensation he is claiming, the basic question is whether he is entitled to something or nothing.

Plaintiff testified that the amount due him represented about twenty per cent of his salary, and that he would not have taken the job with defendant if he had not believed that he would receive this incentive compensation. He also testified that when he voluntarily left defendant on November first, he went to work for Canada Life Assurance Company as district manager, receiving an increase in salary of $2500 per year, the use of a company car, and a guaranteed yearly bonus. It was established at trial that plaintiff had been given a copy of defendant's "Incentive Compensation Program" while he was working for defendant, and that he was specifically informed of the consequences in issue here, namely, that if he quit his job with defendant before December 31 (two months later), he would lose the incentive compensation to which he would otherwise become entitled.

■■ However, plaintiff argues that the salient characteristic of the Program is that the incentive payments are based on the salesman's production, not the length of his employment. Consequently, he argues that the Program was merely a deferred commission plan, under which his compensation was earned when the clients' orders were obtained, even though he might not complete that employment year. He relies rather heavily on *Reiss v. El Bauer Chevrolet Co.* (1968), 96 Ill.App.2d 266, 238 N.E.2d 619, in which some employees sued their former employer for

its failure to pay a "yearly service bonus" based on sales made. That court said the evidence showed that

"the amount claimed due was not a gratuitous bonus but an amount due and owing based upon work produced by the plaintiffs in excess of a stated amount and accumulated on a monthly basis." 96 Ill.App.2d at 271.

Appellant seeks to use *Reiss* to demonstrate the difference between a "bonus" or "gratuity" and wages earned by way of a "deferred commission," and to place the instant situation in the latter category. Reliance is also placed on a comment by Williston concerning commission salesmen:

"* * * in the case of a salesman working on a commission basis, it is reasonable to assume that his compensation has been earned when he has procured the customer's orders although he does not complete his term of employment." *Williston on Contracts*, 3d Ed., sec. 1017C.

Williston notes further, however, that "the usages of business furnish the best guide for interpreting such contracts."

The factual situation in *Reiss* is not parallel to that in this case, and therefore lacks the authority ascribed to it by plaintiff. In *Reiss*, salesmen sought to recover sums of additional compensation they contended were due under an oral contract of employment. The contract provided for payment of a commission on each car sale with an additional "yearly service bonus." The bonus was figured annually after the corporation's fiscal year end, which was July 31. To qualify for the bonus, the employee was required to be in the employ of defendant on July 31 of each year. The salesmen involved left their jobs after July 31, 1966. Apparently their claim covered fiscal years 1964, 1965 and 1966. The manager testified that he had told the employees prior to the end of fiscal year 1964 that in order to qualify for the yearly service bonus, the salesmen must be employed by the corporation on the date the yearly service bonus checks were actually delivered in September of each year. The plaintiffs conceded this point as to 1966 but not as to the two prior years. The court found in favor of the plaintiffs, holding that the contract of employment was executed at the end of the fiscal year, and that all that remained to be done by the employer after that date was to make payment of the bonuses due. In the instant case, plaintiff did not remain in defendant's employ through the end of the year. Also, he was well aware of the substance of his employment contract, particularly the clause in the "Incentive Compensation Program" excluding payment of incentive compensation if the employment did not continue to year-end. Nor did defendant attempt to change the terms of the program (which was in

writing) within plaintiff's last year of employment, nor require that employees remain in its employ beyond the end of the fiscal year to the time of actual payment of the incentive compensation.

■■ Plaintiff also argues that the eligibility condition requiring employment through December 31 to receive incentive compensation is unenforceable because it works an unconscionable forfeiture. Appellant cites Williston's definition of forfeiture, which is a loss of property by a person to whom it belonged

"without adequate return and without any breach of duty * * * commensurate in value with the property lost." *Williston on Contracts*, 3d Ed., sec. 769.

As applied to this case, plaintiff contends that the loss to defendant due to plaintiff's failure to complete the year is not commensurate in value with the monetary loss he himself suffered. He cites *Grey v. A. Stein & Co.* (1952), 348 Ill.App. 156, 108 N.E.2d 502, as an example of a "forfeiture" situation similar to his own. In *Grey*, the contract stated that the employee's salary and "Special Commission" would be computed by the payment of a salary based on a conservative estimate of shipments, with an adjustment at the end of the calendar year, up or down, to conform to the actual shipments. The contract provided that the employee would be eligible for the end-of-year adjustment only if he stayed with the company until that date. The employee resigned on October 15. The court found:

"Any damages which the defendant could possibly sustain under such circumstances would be wholly disproportionate to the amount which plaintiff would forfeit as commissions, and therefore the provision under the applicable law is regarded as a penalty instead of liquidated damages." 348 Ill.App. at 160.

In support of its finding, the court cited two cases. The first, *Iroquois Furnace Co. v. Wilkin Manufacturing Co.* (1899), 181 Ill. 582, 54 N.E. 987, dealt with a contract which required the payment of a certain sum per day for delay in delivery of an article. The court there said that the only damages which would be awarded were the actual damages suffered on account of the delay, unless the sum to be paid was intended to be agreed upon as liquidated damages (in which case such amount might be recovered irrespective of what damages were actually sustained). In the second case, *Advance Amusement Co. v. Franke* (1915), 268 Ill. 579, 109 N.E. 471, the lessee gave the lessor a $2500 security deposit. In referring to this sum, the court said that a stipulated sum will not be allowed as liquidated damages unless it may be fairly allowed as compensation for the breach.

None of these cases is persuasive here in light of the particular pro-

visions of the incentive compensation contract we are asked to construe. This program represents much more than a simple penalty clause for salesmen who do not remain until the end of the year. Equitable's group representatives are expected, under the specific language of the program, to provide service to existing insurance accounts as well as to bring in new business. In addition, the incentive compensation in this case is a net calculation, not a simple matter of computing a percentage of completed sales, but also taking into account the loss of business for which the insurance representative is held responsible. The representative also is expected to maintain a certain level of business before he is considered eligible for the program at all.

Finally, it should be noted that if plaintiff is arguing that he is damaged by the loss of incentive compensation far more than Equitable is damaged by the loss of his services for November and December, it is only reasonable that his new employment must be taken into account. Plaintiff himself testified that he voluntarily left Equitable to take a position with a competitor which paid a larger salary, plus substantial fringe benefits and a guaranteed bonus which he had not been receiving at Equitable. While Equitable did not present any evidence of the specific monetary loss it experienced when plaintiff quit, it did introduce testimony as to the importance it attached to the "Incentive Compensation Program's" completed year provision as a means of stabilizing its roster of insurance representatives.

The "Incentive Compensation Program" was a part of the contract with defendant which plaintiff had freely entered into. Its terms, including the clause in question, were clear and unambiguous, and well known to plaintiff. Further, the consequences of plaintiff's quitting before the end of the year were brought to his attention at the time he made a considered decision to forego a relatively small amount of incentive compensation in favor of substantially higher remuneration in what he voluntarily decided were greener pastures. As a matter of ordinary fairness, he can't have it both ways. That is apparently what the trial court decided, and that is the way we, too, interpret the contract.

The judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.