CHARLES E. JOHNSON, Plaintiff-Appellee and Cross-Appellant, v. FIG-GIE INTERNATIONAL, INC., RAWLINGS SPORTING GOODS DIVISION, Defendant-Appellant and Cross-Appellee

Second District   No. 84—0287

Opinion filed April 26, 1985.

James T. Ferrini, Thomas H. Ryerson, and Katherine S. Dedrick, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellant.

Richard B. Kuseski, of Wasneski, Kuseski, Flanigan & Biondi, of Waukegan, and Warren W. Browning, of Browning & Browning, of Chicago, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Charles Johnson, filed a complaint for declaratory judgment, seeking relief in the form of deferred bonus payments owed him pursuant to an alleged contract between plaintiff and defendant, Figgie International, Inc., Rawlings Sporting Goods Division (hereinafter Rawlings). Subsequently, plaintiff moved for summary judgment. The trial court granted the motion, ruling that there was no question of material fact at issue. The court also granted a motion by the defendant to strike plaintiff's prayer for attorney fees.

On appeal, defendant sets forth a number of contentions to show why the trial court erred in granting plaintiff's motion for summary judgment. Among these contentions are: (1) that the defendant's 1982 Salesman Compensation Plan did not constitute a contract but merely an outline of Rawlings' compensation plan; (2) that if the plan was a contract, parol evidence should not have been excluded because the contract did not constitute an integrated agreement; and, (3) that even if the contract was an integrated agreement, parol evidence should have been allowed to resolve the ambiguity in the terms of the agreement. Additionally, defendant contends that the trial court erred in the amount of its damage award. Lastly, the defendant argues that if the lower court's judgment is reversed, the court's orders denying defendant's discovery motions must also be reversed. Plaintiff cross-appeals, contending that his prayer for attorney fees should have been granted because, as an "employee," he fell within the purview of "An Act providing for attorney's fees when mechanic, artisan, miner, laborer or servant sues for wages" (Ill. Rev. Stat. 1983, ch. 13, par. 13).

Plaintiff, Charles Johnson, was hired as a salesman by defendant, Rawlings, in March 1980. During his employment for Rawlings he was paid a base salary, his necessary expenses, and bonuses and commissions based upon the sales he made of Rawlings' products. At a sales meeting conducted by Rawlings in November 1981, a written document entitled "1982 Salesman Compensation Plan" was given to plaintiff and to each of the other salesmen present. Paragraph D of section II of this compensation plan stated:

"D. 75% Ceiling

A salesman [sic] total bonus paid in any one calendar year may not exceed 75% of his salary for that particular compensation year. However, the excess bonus will be deferred over

the following two (2) years. This will help the salesman achieve a steady growth in income."

Paragraph E stated:

"E. <u>Matching Incentive</u>

In addition each year 25% of the salesman's bonus will be matched and then placed in a deferred program. This deferred compensation will be paid in three (3) subsequent equal installments. Should the salesman leave Rawlings he will forfeit any further payments on the deferred bonus program."

Plaintiff worked for Rawlings during the entire 1982 sales year and at the end of the sales year was given an accounting, prepared by Rawlings, of his sales and earnings, including bonuses. The accounting showed that plaintiff had earned $40,183 in bonuses, $15,750 of which was paid out to him in 1982, pursuant to paragraph D of the 1982 Salesman Compensation Plan. The remainder of the money was deferred, according to the plan, to 1983 and 1984, with half of it, or $12,217, being due in each of these years.

When plaintiff resigned his employment with Rawlings on June 1, 1983, Rawlings refused to pay plaintiff the balance of his 1982 earned bonus which had been deferred to 1983 and 1984, apparently maintaining that the forfeiture provision stated in paragraph E of Rawlings' compensation plan applied to all deferred bonuses and not just to the deferred matching incentive funds. As a result, plaintiff brought an action for declaratory judgment, asking the court to determine that Rawlings owed plaintiff the deferred bonuses and ordering the defendant to pay the sums on or before the dates due. Subsequently, plaintiff moved for summary judgment, contending that the compensation plan set forth the intention of the parties and that, therefore, no genuine issue as to any material fact existed. In opposition, defendant filed the affidavits of other Rawlings' employees, claiming to have personal knowledge of the deferred bonus program, and plaintiff's deposition transcript.

At a hearing conducted on the motion for summary judgment, plaintiff argued that the 1982 Salesman Compensation Plan was a written contract which contained no ambiguity and which had been performed by plaintiff. Defendant maintained that the plan did not constitute a written contract, but if it did, it was not the entire agreement and it was also ambiguous. Therefore, defendant contended, genuine issues of material fact existed and parol evidence should be allowed for a complete understanding of the compensation agreement.

The trial court held that the compensation plan was a written contract which clearly and unambiguously stated the basis for an employ-

ee's compensation. The parol evidence rule applied, because the matters raised by defendant's affidavits were irrelevant and would be inadmissible at trial. Since the terms and the conditions of the contract were unambiguous, the court found, as a matter of law, that the forfeiture provision of paragraph E (of section II) of the plan applied only to that paragraph and the matching incentive funds. All other funds were not subject to forfeiture. The court allowed plaintiff's motion for summary judgment. The court also held that plaintiff was not entitled to attorney fees.

■ Summary judgment is a drastic remedy and is to be awarded with caution; only if the right of the movant is clear and free from doubt may it be granted. (*A. S. Schulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746, 750, 450 N.E.2d 1356.) Thus, in determining whether summary judgment was the proper remedy, we must first consider if the court's determination that defendant's 1982 Salesman Compensation Plan constituted a written contract was correct.

Illinois cases, although not numerous, have held that written documents which have dealt with company plan and policy constitute contracts. In *Anderson v. Equitable Life Assurance Society of the United States* (1974), 17 Ill. App. 3d 489, 308 N.E.2d 387, a life insurance salesman brought an action against his former employer to recover "incentive compensation" allegedly earned during his employment. Plaintiff claimed he was entitled to additional compensation under an "Incentive Compensation Program" which had been put into effect by defendant and become part of plaintiff's employment contract. Under this program a salesman was entitled to incentive compensation based on his individual performance during the calendar year, provided he did not leave defendant's full-time employ before December 31. 17 Ill. App. 3d 489, 490, 308 N.E.2d 387.

The court held that plaintiff, who had left defendant's employ on November 1, was barred from recovery since he had been given a copy of defendant's Incentive Compensation Program while he was working for defendant and since he had knowledge of the clause in the program which excluded payment of incentive compensation if the employment did not continue to the end of the year. The court stated that "[t]he Incentive Compensation Program was a part of the contract with defendant which plaintiff had freely entered into." 17 Ill. App. 3d 489, 493, 308 N.E.2d 387.

In *Tidwell v. Toyota Auto Mart, Inc.* (1978), 59 Ill. App. 3d 378, 375 N.E.2d 540, former employees of an automobile dealer brought action to recover bonus payments allegedly due to them pursuant to a

written document, "Longevity Bonus Cards." All three plaintiffs had been employed under oral contracts and had signed these cards after they had gone to work for Toyota. Under the terms of the cards, plaintiffs were only eligible for bonus payments if they were continuously employed throughout the year. (59 Ill. App. 3d 378, 379, 375 N.E.2d 540.) Defendant maintained that since plaintiffs' employment was terminated 20 days before the end of the year, they were barred from receiving any bonus. However, the evidence showed that the plaintiffs were continuously employed until defendant chose to sell its assets 20 days prior to the end of the bonus year.

This appellate court found that the written cards required only continuous employment throughout the year, that the year ended when Toyota chose to end it 20 days early by selling its assets, and that, therefore, the employees were employed until the end of the year.

In *Carter v. Kaskaskia Community Action Agency* (1974), 24 Ill. App. 3d 1056, 322 N.E.2d 574, the fifth district held that a Personnel Policy Manual setting forth policies of the company was an enforceable agreement. In this case, the plaintiff-employee had no written employment agreement when she began working for the employer in 1967 in a terminable at-will employment relationship. In 1971 the employer compiled a policy manual which was reviewed and accepted by the employees. The court determined that the manual had been adopted by the employer and accepted by the employee after the employee had been hired, and, thus, the manual became a modification of an existing at-will employment contract. (24 Ill. App. 3d 1056, 1059, 322 N.E.2d 574.) Further, the employee's continuing to work constituted not only assent but also consideration for the modification of an existing contract.

In *Enis v. Continental Illinois National Bank & Trust Co.* (N.D. Ill. 1984), 582 F. Supp. 876, the court pointed out that the general rule in Illinois is that an employee handbook is not a part of an employment contract but rather a "gratuity which merely serves as a code of conduct and to define general duties." (582 F. Supp. 876, 878.) According to the *Enis* court, Illinois recognizes two exceptions to this general rule: (1) where a handbook is adopted as a modification of a pre-existing employment contract and sufficient consideration exists to create mutuality of obligation (as was the situation in *Carter v. Kaskaskia Community Action Agency* (1974), 24 Ill. App. 3d 1056, 322 N.E.2d 574); and, (2) where another document exists which can be construed as an express employment contract, and, thus, the policies of a company would be considered incorporated into the written contract. The *Enis* court concluded that the plaintiff in its case did not fall within

either of these exceptions.

Recently, this appellate court held in *Kaiser v. Dixon* (1984), 127 Ill. App. 3d 251, 468 N.E.2d 822, that a staff policy manual which provided for mutuality of obligation by both employer and employee created obligations which were enforceable. In *Kaiser*, plaintiff maintained that she had been discharged from her position as a radio dispatcher for a police department in a manner contrary to a staff policy manual which had been adopted subsequent to plaintiff's hiring and which plaintiff maintained had become part of her employment contract. Plaintiff contended, therefore, that defendant's failure to follow the discharge procedures set out in the manual constituted a breach of contract.

This appellate court found that the detailed manual represented more than "a mere expression of employer policies and procedures as guidance or for informational purposes" for its employees but rather imposed obligations on both employer and employee which were enforceable. 127 Ill. App. 3d 251, 263, 468 N.E.2d 822.

As the preceding cases illustrate, in actions where plaintiffs have based their recovery on a claim that a company's plans or policies constituted a contract, the plaintiffs have prevailed only if they have shown that the plans or policies were part of a pre-existing employment agreement. Thus, we conclude that the 1982 Salesman Compensation Plan, alone, did not constitute a written contract, and that it was either a part of, or a modification of, a pre-existing oral employment agreement. As a result, the plan itself could not represent an integrated agreement, *i.e.*, one which is intended by the parties to be a final and complete expression of the entire agreement. *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63, 418 N.E.2d 431.

Because we conclude that the plan was not the complete expression of the employment agreement between plaintiff and defendant, we find that the trial court erred in applying the parol evidence rule to keep out matters raised by defendant's affidavits. The parol evidence rule applies if the parties intend that a writing alone is to constitute the agreement between them, or if the instrument states that it alone is to constitute the agreement between them, or if the instrument is complete. (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63, 418 N.E.2d 431; *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 842, 342 N.E.2d 290.) Such was not the case here.

■ Rawlings' affidavits and plaintiff's deposition testimony regarding whether the forfeiture provision of the compensation plan applied to the deferred bonus payments as well as the incentive funds should have been examined. An examination would have revealed that

a genuine issue of dispute existed between the parties as to which deferred monies were forfeited at the time of plaintiff's resignation. If a court is presented with disputed facts or conflicting inferences, entry of summary judgment is inappropriate. (*Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, 407, 461 N.E.2d 616.) We find, therefore, that an entry of summary judgment in favor of the plaintiff was inappropriate. Accordingly, we reverse the judgment of the trial court and remand the cause for trial.

On appeal defendant also contends that the trial court erred in the amount of its damage award. Because of the foregoing determination, however, we need not reach this issue.

■ Additionally, defendant seeks reversal of the trial court's denial of defendant's discovery motions. Although the record indicates that a hearing was held on both defendant's original discovery motion to compel production of documents and its motion for rehearing, defendant has failed to produce transcripts of these hearings. Without a transcript of the hearings, we have no basis for determining that the trial court abused its discretion in denying the motion. (*Libco Corp. v. Roland* (1981), 99 Ill. App. 3d 1140, 1147-48, 426 N.E.2d 309.) Because the reviewing court must presume the circuit court acted properly in the absence of a contrary indication in the record, affirmance is dictated if the record omits crucial facts. (*Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1042, 389 N.E.2d 182.) Thus, we affirm the trial court's denial of defendant's discovery motions.

■ Finally, we deem it unnecessary to consider plaintiff's cross-appeal praying for attorney fees under "An Act providing for attorney's fees when mechanic, artisan, miner, laborer or servant sues for wages," which provides for attorney fees "[w]henever a mechanic, artisan, miner, laborer, servant or employee brings suit for wages" (Ill. Rev. Stat. 1983, ch. 13, par. 13). To be eligible to collect attorney fees under this statutory provision, an individual must prevail in his suit. Since we reverse the summary judgment, the case now stands on the pleadings, and the denial of attorney fees becomes moot as of this time.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed in part, affirmed in part, and remanded to the trial court for further proceedings.

Reversed in part, affirmed in part, and remanded.

SCHNAKE and REINHARD, JJ., concur.