Robert J. **PELIZZA**, Plaintiff,

v.

**READER'S DIGEST SALES AND SERVICES INC.**, a Delaware corporation, a subsidiary of Readers Digest Association Inc., Defendant.

No. 85 C 5569.

United States District Court,
N.D. Illinois, E.D.

Nov. 27, 1985.

Robert E. Arroyo, Paul K. Whitsitt, Keck Mahin & Cate, Chicago, Ill., for plaintiff.

Leigh R. Gignilliat, III, Roger Zamparo, Jr., Salinger Gignilliat Hymen & Zamparo, P.C., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Robert J. Pelizza filed this action against Reader's Digest Sales & Services Inc. (Reader's Digest) seeking damages for lost wages and other benefits due to the termination of his employment. The three count complaint alleges breach of contract in Count I, breach of the duty to deal fairly and in good faith in Count II, and intentional infliction of emotional distress in Count III. Defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Plaintiff withdrew Count II. For the reasons stated

below, we deny defendant's motion to dismiss Count I, and grant its motion to dismiss Count III.

We must decide whether employer policies and procedures or an employee manual unilaterally adopted by an employer prior to the date an employee is hired can modify an employment at-will relationship in Illinois. In deciding whether to dismiss a claim for failure to state a claim, we must regard the well pled facts of the complaint as true and construe the allegations of the complaint in the light most favorable to the plaintiff.

### Count I: Breach of Contract

Pelizza alleges in Count I of his complaint that he entered into an employment agreement as an Advertising Sales Representative with defendant on August 17, 1981. He asserts that the oral portions of the contract included his agreement to become an employee of the defendant and the defendant's agreement to pay him for his services. The written portion of the contract, plaintiff alleges, is an Employee Manual which sets out the defendant's established company policies regarding the obligations of both parties. Plaintiff asserts that relevant terms of the manual are that Readers Digest would not terminate an employee unless (1) the employee's work did not meet performance standards established by each department or, (2) the employee was found to be in violation of the company's written rules and regulations. Plaintiff attached sections 3 and 5 of the manual to his complaint. Section 3 states: "It is the policy of the Reader's Digest to take immediate action when an employee violates any of the following rules and regulations." After enumerating the rules, the manual sets out procedures to be followed if an employee violates the rules. The procedures include an immediate suspension for one to three days with the approval of the Department Head and the Personnel Department, during which time the violation will be thoroughly investigated by three members of management. Depending on the results of the investigation, the employee will be either reinstated with back pay, with or without a warning, or terminated. "The Personnel Department will monitor these procedures to be sure they are applied consistently to all employees."

Section 5 sets forth the company's policy regarding involuntary termination of employees.

### INVOLUNTARY TERMINATION POLICY

It is the policy of the Reader's Digest to retain employees whose work meets the performance standards established by each department as necessary for meeting corporate growth and profit objectives. Individuals who are found to be in violation of company rules and regulations, are subject to termination.

The procedure for terminating an employee includes, among other things, requirements that the decision to terminate be discussed with the Personnel Department prior to termination, that there be a termination interview with the employee in which specific work performance deficiencies are cited as documentation, and that an exit interview be conducted with the employee to settle all accounts between the company and the employee.

Pelizza alleges that there was an implied portion of the contract which included an agreement that defendant would conform its conduct in the employer-employee relationship to the guidelines which it prepared and developed, or, in the alternative, that defendant's policy statement implied an agreement to terminate only for cause. Pelizza claims that the defendant breached the terms of the employment contract when he was involuntarily discharged by Reader's Digest on January 2, 1985.

"Under Illinois law, an employment relationship implies the existence of an employment contract." *Rynar v. Ciba-Geigy Corp.*, 560 F.Supp. 619, 624 (N.D.Ill.1983); *see also Sargent v. Illinois Institute of Technology*, 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1 Dist.1979). A written or oral employment contract which does not specify the term of employment creates an employment relationship which endures

at the will of the parties, and which is terminable by the employer or the employee at any time, for or without cause, subject only to independent contractual or statutory provisions. *Rynar*, 560 F.Supp. at 624; *see also Pudil v. Smart Buy, Inc.*, 607 F.Supp. 440 (N.D.Ill.1985); *Enis v. Continental Illinois National Bank & Trust Co. of Chicago*, 582 F.Supp. 876, 879 (N.D.Ill.1984); *Sargent*, 78 Ill.App.3d at 121, 33 Ill.Dec. at 939–40, 397 N.E.2d at 445–46. The Illinois Supreme Court has not addressed the question of whether personnel policies and procedures developed and unilaterally adopted by an employer become a part of the employment contract which is implied by the employment relationship and, thus, modify the at-will nature of the employment relationship. However, several Illinois appellate courts and United States district courts in the Northern District of Illinois have addressed the question.

Defendant argues that the terms of an employment contract and the at-will nature of the employment relationship are not altered by the terms of a personnel policies and procedures manual unless the manual was bargained for or assented to by the employee during his employment. *See Sargent*, 78 Ill.App.3d at 121–22, 33 Ill.Dec. at 940, 397 N.E.2d at 446. A personnel policy is bargained for, and thus modifies the at-will nature of the employment relationship "where the terms of the policy itself suggest that a mutuality of obligation was intended by employer and employees when the policy was written, and the facts surrounding implementation of the policy establish that the policy modified the pre-existing employment contract which is implied in the employer-employee relationship." *Rynar*, 560 F.Supp. at 624 (citations omitted).

In *Carter v. Kaskaskia Community Action Agency*, 24 Ill.App.3d 1056, 322 N.E.2d 574 (5 Dist.1974), a personnel policy manual was adopted after employees had been hired. It gave employees the right to a grievance hearing before discharge in exchange for forfeiture of vacation pay if an employee failed to give thirty days notice prior to resigning. The employer reviewed the manual with employees who then accepted it. Thus, the court concluded that the manual was a proposed (and accepted) modification of an existing at-will employment contract, which imposed obligations on both parties. The court found that the employees both assented to the modification and provided consideration for the modification by continuing to work after the modification was implemented, thus creating mutuality of obligation and an enforceable contract. *Id.* at 1058–59, 322 N.E.2d at 576.

In *Sargent*, however, the Appellate Court of Illinois for the First District found that a personnel manual adopted and issued by the employer to its employees did not become part of an employment contract. 78 Ill.App.3d at 122, 33 Ill.Dec. at 940, 397 N.E.2d at 446. The court found that, unlike *Carter*, the manual was given to the plaintiff when he began his employment. *Id.* Furthermore, since the manual only defined the duties and responsibilities of the job, by agreeing to be bound by it the plaintiff merely agreed to properly perform his job and nothing more. Since the plaintiff did not provide any additional consideration (other than his services) to support the pre-discharge hearing requirement in the personnel manual, it did not become part of an enforceable contract.

The rationale of *Sargent* has guided United States district courts applying Illinois law. *See Rynar*, 560 F.Supp. 619; *Enis*, 582 F.Supp. 876. In *Rynar* we granted defendant's motion for summary judgment because, even though the terms of the employer's policy suggested a mutuality of obligation from which a mutuality of consideration might be inferred, the undisputed facts did not suggest that either the plaintiff individually, or the employees collectively accepted the personnel policy as a contract.

In *Enis*, Judge Bua found that discharge procedures contained in an employee handbook did not rise to the level of a mutually enforceable agreement because the hand-

book was given to the plaintiff when she was hired, so there was no modification of a pre-existing employment agreement. Moreover, the guidelines in the handbook were not bargained for, but merely defined the duties of the job. Thus, by accepting the handbook, the plaintiff merely agreed to properly perform her job duties and nothing more. Since the plaintiff did not provide any additional consideration (other than her services) to support the discharge procedures set out in the handbook, those procedures did not become part of the employment contract. *Enis*, 582 F.Supp. at 879.

The mode of inquiry adopted by the Illinois Appellate Courts in these earlier decisions focused on the adequacy of consideration. The courts tended to treat the "rule" that an employment relationship of undefined duration is terminable at the will of either party, as a substantive rule of law, rather than as a rule of construction for interpreting otherwise ambiguous contracts. *See Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 884 (1980). As we pointed out in *Rynar*, "In some jurisdictions, the existence of a personnel policy and employees' general awareness that the policy provides certain benefits are enough to make the policy part of the employment contract." 560 F.Supp. at 625. At that time, we concluded that the Illinois rule was otherwise. However, in the interim, the Illinois Appellate Courts for the first and second districts have rejected the rationale of *Sargent* and adopted the rationale of cases such as *Toussaint*.

In *Toussaint*, the Michigan Supreme Court found that even where an employment contract is for an indefinite term, it may provide that an employee shall not be discharged except for cause. The court found that "such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." *Id.*, at 598, 292 N.W.2d at 885. The court pointed out:

While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

*Id.* at 613, 292 N.W.2d at 892, *citing Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917).

Recent Illinois Appellate Courts have explicitly adopted the *Toussaint* rationale, rejecting the *Sargent* Court's narrow reading of *Carter*. *Kaiser v. Dixon*, 127 Ill.App.3d 251, 263, 82 Ill.Dec. 275, 284–85, 468 N.E.2d 822, 831–32 (2d Dist.1984); *see also Duldulao v. St. Mary of Nazereth Hospital Center*, 136 Ill.App.3d 763, 765, 91 Ill. Dec. 470, 472, 483 N.E.2d 956, 958 (1 Dist., 1985); *cf. Johnson v. Figgie International, Inc.*, 132 Ill.App.3d 922, 87 Ill.Dec. 669, 477 N.E.2d 795 (2 Dist.1985). In *Kaiser*, the court concluded that a detailed 83-page manual adopted by the employer after the plaintiff was hired and which imposed mutual obligations on both employer and employees was enforceable despite the fact that there was no evidence that the manual was "bargained for" by the employees.

The court pointed out that the manual went far beyond a mere expression of employer policies and procedures as guidance or for informational purposes, and declined to follow *Sargent* to the extent that the court's rationale was inconsistent with that opinion. *Id.,* 127 Ill.App.3d at 263, 82 Ill. Dec. at 285, 468 N.E.2d at 832. *Kaiser* noted the split of authority on the issue in other jurisdictions, but found "the better reasoned approach" to be to bind the "employer to the terms in its policy manual" whenever the manual "imposes obligations on both the employee and employer," regardless of whether the manual was "bargined for" or not. *Id.* at 262, 82 Ill.Dec. at 284, 468 N.E.2d at 831; *accord Pudil v. Smart Buy, Inc.,* 607 F.Supp. 440 (N.D.Ill. 1985). *Kaiser* was reaffirmed in *Johnson v. Figgie,* 132 Ill.App.3d 922, 87 Ill.Dec. 669, 477 N.E.2d 795.

However, the court pointed out that to recover, plaintiff must show that the employer's policies were a part of a preexisting employment agreement. That is, the policies must be implemented after the employee was hired. This analysis, too, delves into the adequacy of the consideration. Such reasoning was implicitly rejected in *Kaiser* and *Toussaint.*

In *Duldulao,* the first District Appellate Court went even further. On facts indistinguishable from those in the case at bar, the court in *Duldulao* reversed the trial court decision granting summary judgment for defendant. There was no written employment contract, and the duration of the employment was indefinite. "Plaintiff maintained that the defendant breached the employment relationship by not affording her the benefit of the progressive disciplinary policy for non-probationary employees set forth in the employee handbook." *Duldulao,* 136 Ill.App.3d at 764, 91 Ill.Dec. at 471, 483 N.E.2d at 957. Following the *Kaiser* court, the court concluded that the manual was binding on the employer since it imposed obligations on both employee and employer, even though it was not "bargained for." In *Duldulao,* as in the case before us, the manual was apparently in

effect prior to the time the plaintiff was hired.

It is apparent, therefore, that the trend in Illinois, and the better reasoned approach, is to bind employers to the terms of their policy manuals when the manual imposes obligations on both the employer and employee, regardless of whether the manual was actually bargained for, and regardless of whether it modifies an existing employment relationship, or was in effect at the time the plaintiff was hired. *See Kaiser,* 127 Ill.App.3d at 262, 82 Ill. Dec. at 284, 468 N.E.2d at 831; *Duldulao,* 136 Ill.App.3d at 765, 91 Ill.Dec. at 472, 483 N.E.2d at 958; *accord Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251 (7th Cir.1985); *Pudil,* 607 F.Supp. 440; *Kufalk v. Hart,* 610 F.Supp. 1178, 1193 (N.D.Ill. 1985); *Lockridge v. Caron Int'l, Inc,* No. 85 C 3187, slip op. (N.D.Ill. Sept. 24, 1985) (unpublished opinion); *Haas v. William Rainey Harper College,* No. 84 C 5796, slip op. (N.D.Ill. Aug. 9, 1985) (unpublished opinion).

Here, the employer's manual imposed obligations on both the employees and the employer. A fair inference from the portions of the manual attached to plaintiff's complaint is that the employer will only fire employees for cause.

For the foregoing reasons, we cannot say that it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Therefore, we cannot dismiss Count I for failure to state a claim. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02 (1957).

### Count III

Count III attempts to make out a claim for intentional infliction of emotional distress. To properly plead such a claim the plaintiff must allege that the defendant intended to cause emotional distress, or recklessly disregarded the probability of causing emotional distress, and that the defendant's extreme and outrageous conduct was the proximate cause of the plaintiff's severe emotional distress. *See, e.g.,*

*Palmateer v. International Harvester Co.*, 85 Ill.App.3d 50, 53, 40 Ill.Dec. 589, 592, 406 N.E.2d 595, 598 (3 Dist.1980), *rev'd in part on other grounds*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); *Stoecklein v. Illinois Tool Works, Inc.*, 589 F.Supp. 139, 145–46 (N.D.Ill.1984).

In relevant part, Count III states only that the "defendant terminated plaintiff based on the claim that 'he did not fit the image of a Reader's Digest sales person,' despite his exemplary sales record and in contravention of its policy for involuntary termination." As a result, plaintiff claims to have manifested signs of emotional distress in the form of severe depression and insomnia.

Plaintiff has failed properly to allege three of the four elements of the tort. He has not alleged that the defendant either intended to cause emotional distress, or that the defendant acted with such reckless disregard that it should have known that severe emotional distress was substantially certain to result. Plaintiff has not alleged any extreme or outrageous conduct by defendant. He has merely alleged that the defendant fired him without just cause, allegedly in violation of an employment contract. Such conduct is not extreme or outrageous. Nor are such allegations sufficient to withstand a motion to dismiss. *See, e.g., Stoecklein*, 589 F.Supp. at 146 & n. 9; *Pudil*, 607 F.Supp. at 444 and cases cited therein. Finally, plaintiff alleges only that he suffered severe emotional distress (and insomnia). "Severe emotional distress" is a conclusion of law which must be supported by factual allegations in the complaint. *Stoecklein*, 589 F.Supp. at 146, n. 9. Plaintiff did allege proximate cause. Plaintiff argues that, though the burden is high, his complaint is sufficient to withstand a motion to dismiss for failure to state a claim. If the only problem with this claim were the lack of factual allegations on the severity of his emotional distress, we might be inclined to agree. However, the complete lack of an allegation of outrageous conduct, and the apparent impossibility of making such an allegation given the facts which are alleged, lead us inevita-

bly to dismiss Count III for failure to state a claim upon which relief can be granted.

**Conclusion**

For the reasons stated above, defendant's motion to dismiss for failure to state a claim is granted as to Count III, and denied as to Count I. Count II has been withdrawn by the plaintiff.