CHARLES E. JOHNSON, Plaintiff-Appellee and Cross-Appellant, v. FIG-GIE INTERNATIONAL, INC., RAWLINGS SPORTING GOODS DIVI-SION, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—85—0889

Opinion filed December 31, 1986.

James T. Ferrini, Thomas H. Ryerson, William H. Gifford, Jr., and Paul D. Sheldon, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellant.

Warren W. Browning and Richard B. Kuseski, both of Kuseski, Flanagan & Associates, of Waukegan, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Charles E. Johnson, filed a complaint for declaratory judgment, seeking to recover deferred bonus payments, as outlined in a written compensation plan, from defendant, Figgie International, Inc., Rawlings Sporting Goods Division (Rawlings). The plaintiff moved for summary judgement seeking the relief requested in the complaint. The trial court granted summary judgment to plaintiff, finding that the compensation plan constituted a written contract which clearly and unambiguously stated the basis for an employee's compensation and thus refusing defendant's extrinsic evidence submitted in response to the motion for summary judgment. On appeal, this court in *Johnson v. Figgie International, Inc., Rawlings Sporting Goods Division* (1985), 132 Ill. App. 3d 922, 477 N.E.2d 795, reversed, holding that the written compensation plan could not represent an integrated agreement and remanded the cause, directing the lower court to consider defendant's extrinsic evidence. On remand, the same judge again found for plaintiff, striking the extrinsic evidence submitted by defendant and ruling that the compensation plan contained the entire agreement between the parties regarding bonus payments. The judge found that under the unambiguous terms of that agreement, plaintiff was entitled to his deferred bonus payments. Defendant appeals from this judgment.

In this court defendant contends: (1) that the trial court erred in disregarding this court's prior decision in this case which required the trial court to consider the parol evidence submitted by defendant, especially when the evidence clearly mandates reversal of the trial court's judgment, and (2) that the forfeiture provisions of the bonus plan did not constitute an unconscionable penalty. Plaintiff cross-appeals, contending that the trial court erred in denying plaintiff's prayer for attorney fees.

At the bench trial, plaintiff testified that at the time he began working for defendant in March 1980, the terms of his employment were explained orally and in writing. The portion of his employment agreement which was written constituted the compensation program in existence at the time. The 1982 compensation plan which plaintiff received at defendant's 1981 sales meeting replaced the prior bonus or commission plan. The new plan was explained at the meeting by Stan Morrison, who stood at the front of the meeting room where plaintiff could see and hear him clearly. Plaintiff was present for the entire discussion of the bonus compensation plan.

Plaintiff related that he did not remember whether Morrison utilized a flip chart to explain the plan. He did remember that Morrison

discussed each provision of the plan on a point-by-point basis and that Morrison described the new bonus program. In talking about the provisions of the plan, Morrison explained that the plan offered the sales force an opportunity to make more money. To the best of plaintiff's knowledge, Morrison did not say anything about the forfeiture aspects of the plan.

Plaintiff stated that on June 1, 1983, he resigned from Rawlings to pursue a "better opportunity." Before he gave notice to defendant, he spoke with Dick Roche, a fellow salesman, and Dan Olson regarding the forfeiture aspects of the 1982 bonus plan. Roche indicated that the 25% matching incentive (provided in paragraph E of the plan) would be forfeited if plaintiff left but that he did not think the 75% ceiling portion (provided in paragraph D of the plan) would be. Plaintiff also had a conversation with Dick Davis, the regional sales manager for defendant, during which Davis informed plaintiff that if he left Rawlings, he would forfeit all of his deferred compensation, including the 75% ceiling portion.

At the close of plaintiff's testimony, plaintiff rested and defendant made a motion for a directed verdict which was denied.

Six witnesses testified on behalf of defendant. Randall Kirby, Donald Kirsch, Daniel Olson, Richard Roche, and Richard Davis, current employees of defendant, were all present at the 1981 sales meeting for Stan Morrison's introduction and explanation of the 1982 compensation plan. Each witness received a copy of the plan and recalled that Morrison explained the program. Morrison used a flip chart at the meeting to explain the plan, going through the plan "point by point." Both Kirby and Kirsch recounted that Morrison explained to the salespeople that if they left for any reason before either the 75% ceiling portion or the 25% matching incentive funds were paid, they were not going to receive that money; they would simply lose it. The portions of the provisions of the compensation plan which dealt with the 75% ceiling and the 25% matching incentive funds stated:

"D. *75% Ceiling*

A salesman [*sic*] total bonus paid in any one calendar year may not exceed 75% of his salary for that particular compensation year. However, the excess bonus will be deferred over the following two (2) years. This will help the salesman achieve a steady growth in income.

E. *Matching Incentive*

In addition each year 25% of the salesman's bonus will be matched and then placed in a deferred program. This deferred

compensation will be paid in three (3) subsequent equal installments. Should the salesman leave Rawlings he will forfeit any further payments on the deferred bonus program."

Daniel Olson stated that Morrison told the salespeople that upon termination with Rawlings, quitting or being let go, they would forfeit any deferred bonuses or commissions. To the best of Olson's memory, Morrison indicated that upon leaving the company an individual forfeited both types of deferred bonuses, the 75% ceiling and the 25% matching incentive. On cross-examination, the court asked Olson how sure he was that Morrison specifically stated that the 75% ceiling fund specified in paragraph D of the compensation plan would be forfeited. Olson replied that he could not specifically say that Morrison indicated the funds provided in paragraph D would be forfeited but that he left the sales meeting presuming that the forfeiture applied to all bonuses.

Both Roche and Davis testified that they had conversations with plaintiff regarding the forfeiture provisions at the time plaintiff informed them that he was quitting his position with Rawlings. Roche recalled that plaintiff asked him how he interpreted the forfeiture clause of the compensation program. Roche told plaintiff that he was certain the 25% matching incentive would be forfeited but he was uncertain regarding the "balance of that particular paragraph." Roche advised plaintiff to consult a lawyer. Davis related that he discussed the forfeiture aspects of the compensation plan with plaintiff, telling plaintiff that he hated to see plaintiff "walking away from that much money."

Roche also testified that at the sales meeting Stan Morrison explained the provisions of the bonus compensation plan but Roche did not have any specific recollection of what it was Morrison definitely said about the plan. Davis recalled that Morrison said if you leave Rawlings you forfeit your bonus, but Davis could not recall if Morrison specifically indicated what portion of the bonus would be forfeited.

Stan Morrison, a former employee of defendant and the sales planning manager for defendant at the time of the 1981 sales meeting, was largely responsible for putting together the new 1982 compensation plan. Morrison testified that under the former compensation plan, Rawlings was losing about one-third of its salesmen per year which, in turn, was affecting the company sales, morale, and any consistencies in defendant's training program. Morrison put together a compensation plan which would provide bonuses comparable to those of other salespeople in the market place. At trial Morrison

went through the various provisions of the plan, pointing out that the purpose of paragraph D of part II, the 75% ceiling provision, was to build a program which would enable a salesperson to "make progressive income" rather than paying him everything [his entire bonus] in one year. Paragraph E, the 25% matching incentive provision, was designed to build future funds, to give stability to an individual's income, and to give an individual incentive to stay with Rawlings.

Morrison stated that during the 1981 annual meeting, he specifically held a meeting just for the marketing staff wherein he presented the compensation plan. Morrison related that the plan was distributed to the salespeople. Using a flip chart, Morrison went through the written document and then went back through it giving examples to show the difference between what an individual would have made under the previous compensation plan and what he would have earned under the new plan. Morrison testified that when he discussed part II of the plan, which dealt with bonuses, he went into each paragraph in detail. Morrison stated that parts of paragraphs D and E, the 75% ceiling portion and the 25% matching incentive portion, were reprinted on the same page of the flip chart and discussed at the same time since deferred compensation was new to the salespeople. Morrison recounted that he explained "very strongly" to the salesmen that if they left the company for any reason, they would forfeit future or deferred money. Morrison told the salespeople specifically which deferred money they would lose, *i.e.*, "any matching incentive money in the future and any ceiling money in the future."

Morrison also testified that when he learned plaintiff was resigning, he contacted plaintiff and asked him, "Do you realize the money that you're walking away from?" Plaintiff replied, "Yes."

During Morrison's testimony, counsel for defendant asked Morrison if it was his intention, in creating the 1982 compensation plan, that the plan was to be the complete description of the bonus compensation agreement. Morrison replied, "Yes." Counsel then impeached his own witness by asking Morrison if the plan was intended merely as an outline for the sales meeting and if the discussion of the plan was intended to explain the written document. Morrison also replied "Yes" to these questions.

At the conclusion of the trial, the court concluded that, looking at all the evidence with the exception of defendant's parol evidence, paragraphs D and E of part II of the compensation plan were unambiguous and, thus, no forfeiture of the 75% ceiling funds existed

based on the agreement. The court allowed plaintiff's motion to strike defendant's parol evidence which plaintiff had previously tendered at the close of all the proofs, and entered judgment in favor of plaintiff as to the monies owed him under the 75% ceiling portion of the plan.

Further, the court stated that it was going to make a finding of fact, based on the parol evidence it heard. The court commented that plaintiff did not say much about whether there was clear communication outside of the document because plaintiff did not have much recollection. Also, the court did not find the defense witnesses particularly credible. What the court did find credible was Morrison's statement that the document contained the entire agreement. The court found that Rawlings intended the plan to be the entire agreement regarding bonuses between the parties. In interpreting the agreement, the court stated that the 25% matching incentive paragraph clearly constituted a forfeiture paragraph but that the 75% ceiling portion of the agreement contained no forfeiture provision. At best, it was ambiguous and, therefore, must fail.

Additionally, without making any specific findings, the court denied plaintiff's motion for attorney fees.

In the prior appeal between the parties (*Johnson v. Figgie International, Inc., Rawlings Sporting Goods Division* (1985), 132 Ill. App. 3d 922, 477 N.E.2d 795), this court found that the 1982 compensation plan was not the complete expression of the employment agreement between plaintiff and defendant and that, therefore, the trial court should not have applied the parol evidence rule to keep out matters pertaining to the plan which were raised in defendant's affidavits. As an examination of these affidavits and plaintiff's deposition would have revealed that a genuine issue of dispute existed between the parties, we reversed the trial court's entry of summary judgment in plaintiff's favor and remanded the cause for trial.

■ In this appeal defendant first contends that the trial court erred in disregarding this court's prior decision in this case, which required the trial court to consider the parol evidence submitted by defendant, and that, in failing to consider this evidence, the trial court reached a decision which was contrary to the manifest weight of the evidence. In opposition to defendant's first contention, plaintiff argues the same points already resolved by this court in the first appeal regarding whether the compensation plan was a complete agreement. However, the "law of the case," as decided on a previous appeal, is binding on both the trial court and the appellate court (*In re Application of Kane County Collector* (1985), 135 Ill.

App. 3d 796, 800, 482 N.E.2d 161). Thus, we are not at liberty to reconsider the nature of the compensation plan and must adhere to our prior finding that the 1982 compensation plan did not constitute the complete employment agreement between plaintiff and defendant.

Plaintiff also maintains that the trial court did not disregard this court's prior decision because this court in the prior appeal did not have before it the same evidence upon which the trial court made its subsequent findings. However, in making its finding to exclude defendant's parol evidence, the court did not specify what other evidence it was considering. Without defendant's parol evidence, the evidence before the court consisted of the same document, the 1982 compensation plan, considered by this court in the prior appeal, and the plaintiff's testimony, which was substantially the same as his deposition that we deemed the court should consider on remand. In the prior appeal we also noted that the trial court should have considered the affidavits of defendant's witnesses. These affidavits were similar to the testimony presented by defendant's witnesses which, on remand, the court struck at the end of the trial.

■ We are inclined to agree with defendant's position that the thrust of this court's former opinion was that, on remand, the trial court should consider all the parol evidence regarding the compensation plan. In that respect, we believe the trial court erred in granting plaintiff's motion to strike the testimony of defendant's witnesses. However, we believe that this error was harmless in light of the fact that the trial court subsequently elected to make a finding of fact regarding this testimony and, in so doing, made it evident that the court had considered the testimony of defendant's witnesses in reaching its decision. In considering the testimony, the court found that the defense witnesses were not particularly credible and that it did not believe their testimony.

■ It is the role of the trial court, as the trier of fact, to resolve the credibility of witnesses and the weight to be given their testimony, and a court of review will not substitute its judgment thereon unless the opposite conclusion is clearly evident. (*10-Dix Building Corp. v. McDannel* (1985), 134 Ill. App. 3d 664, 674, 480 N.E.2d 1212.) Here, we do not completely agree with the court's conclusions regarding the credibility of defendant's witnesses. The individual who was basically responsible for drawing up the compensation plan, Stan Morrison, no longer worked for defendant at the time of trial and, therefore, had no reason to benefit by lying regarding the interpretation of the forfeiture provisions of the plan.

Additionally, the other defense witnesses, who testified that the forfeiture provision applied to the 75% ceiling portion of the bonus program as well as the 25% matching incentive, although still employed by defendant, testified against their own interests since their testimony precluded any future claim on their part for their 75% ceiling portion of their bonuses upon departure from Rawlings.

Also, the testimony of three of defendant's witnesses did not substantiate defendant's claim that the forfeiture provision applied to the 75% ceiling portion. Dan Olson testified that he was uncertain whether it applied, Richard Roche did not remember exactly what was said at the 1981 meeting regarding forfeitures, and Richard Davis recalled only that a salesman forfeited his bonus upon leaving the company; he did not remember whether Morrison indicated what specific bonus portions would be forfeited. In light of the above testimony, it would seem that an opposite conclusion to the trial court's finding that the defense witnesses were not particularly credible may be evident.

■ Nevertheless, as the trial court heard and watched the witnesses and also participated in questioning them, we believe it was in a better position than this court on review to weigh the credibility of the witnesses. Moreover, although the court did not expand on its reasoning regarding finding defendant's witnesses not credible, the court did comment that it did not believe that their testimony was founded on a clear recollection but rather was a reconstruction of the communication which occurred outside the document. Also, we note that the court was particularly critical of Morrison's testimony, and the record does reveal that, at one point, counsel for defendant impeached Morrison, its own witness. Accordingly, we will not substitute our judgment for that of the trial court regarding the creditability of defendant's witnesses.

■ In ruling that the testimony of the defense witnesses was not credible, the court found that the compensation plan "contained the entire agreement between the parties." As mentioned earlier in this opinion, by our reversal of the trial court's prior judgment that the plan constituted the entire agreement between plaintiff and defendant, the trial court was bound by our finding and, thus, could not then rule contrary to that finding. Where the appellate court reverses a judgment, its findings are final upon all questions decided, and the court to which the case is remanded can proceed only in conformance to the appellate court's judgment. (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 666, 405 N.E.2d 1220.) While at first glance it may appear that the trial court did not act in conformance

with our earlier decision that the plan did not constitute the complete agreement between the parties, an examination of the trial court's findings indicates that the court was referring to the compensation plan as being the complete agreement between the parties regarding bonuses. This conclusion appears true as testimony showed that the provisions dealing with bonuses replaced a prior written bonus plan. Also, at one point during Morrison's testimony, he stated the plan was to be the complete description of the bonus compensation agreement.

■ The testimony, both plaintiff's and that of defendant's witnesses, also showed that defendant's employees were not in agreement regarding the interpretation of the forfeiture provision of the plan. Thus, we do not believe that the testimony clarified, one way or the other, how the forfeiture provision should be interpreted. As a result, we do not believe that the trial court's striking of the defense witnesses' testimony, in any way, prejudiced the defendant's case. To reach a decision regarding the forfeiture provision, the trial court needed to examine the plan, and it is apparent from its findings that that is what the court did in reaching its judgment.

■ Our review of the document reveals that the trial court's judgment in favor of plaintiff was proper. From our reading of the forfeiture provision, we conclude that it applies only to paragraph E, the 25% matching incentive funds, and not to paragraph D, the 75% ceiling portion.

Paragraph D states:

"A salesman [sic] total bonus paid in any one calendar year may not exceed 75% of his salary for that particular compensation year. However, the excess bonus will be deferred over the following two (2) years. This will help the salesman achieve a steady growth in income."

Paragraph E states:

"In addition each year 25% of the salesman's bonus will be matched and then placed in a deferred program. This deferred compensation will be paid in three (3) subsequent equal installments. Should the salesman leave Rawlings he will forfeit any further payments on the deferred bonus program."

Any mention of forfeiture of further payments on deferred bonuses upon a salesman's leaving Rawlings appears only in paragraph E. It is our belief that had defendant wanted this forfeiture provision to equally apply to the funds described in paragraph D, a sentence to that effect should have been inserted at the end of that paragraph.

The trial court found that paragraphs D and E constituted the

entire agreement as to bonuses and that these paragraphs were unambiguous. We also find the provisions unambiguous. However, even if it could be argued that an ambiguity exists between the two paragraphs, that ambiguity would be most strongly construed against defendant, as maker of the document, since he chose the words within the paragraphs. (*Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 361, 456 N.E.2d 298.) As any ambiguity would, therefore, be resolved against defendant, the trial court's judgment that the forfeiture provision applied only to the 25% matching incentive fund set forth in paragraph E would still be correct.

We note that defendant maintains it was denied a fair and impartial trial because the trial court formed a "fixed anticipatory judgment" and did not consider defendant's evidence at all. Defendant's complaint of prejudice appears strictly centered upon the trial court's refusal to accept defendant's parol evidence in the form of the testimony of its witnesses. It is true that the trial court could not discount the testimony of defendant's witnesses unless that testimony was impeached, contradicted by positive testimony or by circumstances, or found to be inherently improbable. (*Bucktown Partners v. Johnson* (1983), 119 Ill. App. 3d 346, 353, 456 N.E.2d 703.) However, the court did make it apparent, in making its finding of fact regarding the testimony of defendant's witnesses, that it had considered the testimony in reaching its decision, despite its action of striking this testimony. That testimony, however, was contradictory since some witnesses remembered that the forfeiture provision of the compensation plan, which was discussed at Rawlings' 1981 annual meeting, applied to both paragraphs D and E, while other witnesses were either uncertain whether it applied to both or did not recall it being discussed.

■ Where a provision can be interpreted in conflicting ways, parol evidence may be admitted to explain the terms of the ambiguity. (See *Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 582, 312 N.E.2d 27.) However, even if defendant's parol evidence in the form of defendant's testimony had been admitted and not stricken here, that testimony, as mentioned above, was contradictory and did not conclusively establish that the salespeople, including plaintiff, attending the 1981 meeting were told that the forfeiture provision of paragraph E also applied to paragraph D. The evidence in this case shows that defendant was not entitled to judgment in its favor, as it claims here and, therefore, could not have been deprived of a fair trial by the court's entry of an adverse judgment. Entry of

an adverse judgment, standing alone, does not constitute evidence of prejudice. (*City of Chicago v. Walker* (1978), 61 Ill. App. 3d 1050, 1054, 377 N.E.2d 1214.) Furthermore, other than defendant's claim of prejudice based on the court's striking of its parol evidence, which we have addressed, our own examination of the record reveals no evidence to support defendant's contention that the trial judge was prejudiced against it or that he reached a premature decision.

In view of our disposition of the first issue, it is not necessary to address defendant's second contention that the forfeiture provision of the bonus plan did not constitute an unconscionable penalty.

Rather, we next address plaintiff's cross-appeal. In his cross-appeal, plaintiff contends that the trial court erred in denying his prayer for attorney fees brought pursuant to "An Act providing for attorney's fees when mechanic, artisan, miner, laborer or servant sues for wages" (the Act) (Ill. Rev. Stat. 1983 ch. 13, par. 13). This Act provides for reasonable attorney fees to be awarded whenever:

"[A] mechanic, artisan, miner, laborer, servant or employee brings suit for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he has brought suit is justly due and owing, and that a demand was made in writing at least 3 days before suit was brought, for a sum not exceeding the amount so found due and owing *** ."

Defendant argues that this court has held that the Act is in derogation of the common law and must be strictly construed (*Koudelka v. Village of Woodridge* (1980), 91 Ill. App. 3d 884, 888, 413 N.E.2d 1381) and that, as a result, a salesman is clearly not covered by the statute.

Defendant, in support of its position, relies on several cases which it contends show that a salesman is not covered by the Act. (See *Buren v. Mercury Press, Inc.* (1935), 280 Ill. App. 217; *Goodridge v. Alton* (1908), 140 Ill. App. 373.) However, the most recent authority on the question of whether a salesman is an "employee" within the Act, and the case relied upon by plaintiff, is *Reiss v. El Bauer Chevrolet Co.* (1968), 96 Ill. App. 2d 266, 238 N.E.2d 619. *Reiss* involved an action brought by two automobile salesmen seeking to recover bonuses due them based on the amount of sales made during a year. The court in *Reiss* disagreed with previous cases holding that the term "employee" in the statute was limited to those engaged in services like those of a mechanic, artisan, miner, laborer, or servant and held that the term included "all employees who must sue to obtain payment of their wages and who otherwise comply

with the requirements of the statute." (96 Ill. App. 2d 266, 271, 238 N.E.2d 619.) *Reiss* is on point, has never been overruled, and is, in our view, correctly decided.

We believe defendant's citation to *Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 457 N.E.2d 66, as illustrative of this court's failure to follow the decision in *Reiss* is entirely misleading. In *Koop* we determined that although the plaintiff, who was suing for wages promised him under two employment contracts, was more in the nature of an "employee" than the village official in *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 387 N.E.2d 1118, plaintiff's services were more like those of an independent contractor. This court held that because no precedent existed for *this type* of employment being considered by the legislature in the statute in question, plaintiff was not an "employee" within the meaning of the statute. *Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 406, 457 N.E.2d 66.

In *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 387 N.E.2d 1118, cited above, the court limited the holding in *Reiss* to its facts, finding that the category of claimants in *Reiss*, two salesmen, was not analogous to the village clerk in *Lites* who was suing for his salary. The *Lites* court found that an elected official was not an "employee" under the Act because "he is an officer and an official of the village as opposed to being or functioning as an employee." 70 Ill. App. 3d 374, 377, 387 N.E.2d 1118.

These two fairly recent cases, *Koop* and *Lites*, which have dealt with the Act and which have failed to apply the holding in *Reiss*, have ruled thusly because they were factually distinguishable from *Reiss*, as shown above. The instant case, however, is factually similar to *Reiss* where here, as in *Reiss*, plaintiff's request for reimbursement was for work actually performed as a salesman for defendant. As *Reiss* represents the most recent and the most definitive treatment regarding whether a salesman is an "employee," we elect to follow it.

■ Furthermore, it is apparent that the courts in *Reiss*, *Koop*, and *Lites* strictly construed the Act involved in reaching their decision by giving the term "employee" its generally accepted meaning. This was proper since it is a basic tenet of statutory construction that when terms of a statute are not specifically defined, they must be given their ordinary and popularly understood meanings. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937.) An "employee," as defined in Black's Law Dictionary is:

"One who works for an employer; a person working for sal-

ary or wages; applied to anyone so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a corporation or government or to domestic servants. [Citations.]

Generally, when person for whom services are performed has right to control and direct individual who performs services not only as to result to be accomplished by work but also as to details and means by which result is accomplished, individual subject to direction is an 'employee.' [Citation.]

\* \* \*

'Employee' must be distinguished from 'independent contractor,' 'officer,' 'vice-principal,' 'agent,' etc. The term is often specially defined by statutes; and whether one is an employee or not within a particular statute will depend upon facts and circumstances." (Black's Law Dictionary 617-18 (4th ed. 1968).)

Additionally, Webster's Third International Dictionary defines "employee" as "one employed by another usually in a position below the executive level and usually for wages." Webster's Third New International Dictionary 743 (1981).

■■ Clearly, the plaintiff involved in *Koop*, which the court described as in the nature of an independent contractor, and the plaintiff in *Lites*, a village official, were not employees within the definitions given above. But, the plaintiffs in *Reiss* and the plaintiff in the instant case, salesmen working for wages, clearly qualify as employees, according to definition. Accordingly, we conclude that a salesman is an "employee" within the meaning of the Act and that, therefore, plaintiff is entitled to recover attorney fees from the defendant for the costs incurred for bringing this suit for wages.

For all the reasons stated above, the judgment of the trial court of Lake County finding in favor of plaintiff and against defendant for $24,434 in bonus payments is affirmed. The judgment denying plaintiff's prayer for attorney fees is reversed and remanded for hearing on the question of fees.

Affirmed in part; reversed and remanded in part.

WOODWARD and UNVERZAGT, JJ., concur.