SIO PALELEI, Plaintiff

v.

STAR KIST SAMOA, Inc., Defendant

High Court of American Samoa
Trial Division

CA No. 89-87

September 23, 1987

Before REES, Chief Justice, TAUANU'U, Chief Associate Judge, and OLO, Associate Judge.

Counsel: For Plaintiff, Charles Ala'ilima
         For Defendant, John Ward

Opinion and Order on Motion for Summary Judgment:

Plaintiff Sio Palelei claims that his employer Star Kist wrongfully terminated his employment in October, 1986, by failing to afford him "progressive disciplinary procedures" which he claims were his due under the employment contract. Plaintiff invokes the contents of a policy manual distributed to Star Kist employees, which plaintiff claims fixes the terms of the parties' employment agreement. Defendant Star Kist, contending that plaintiff's employment was "at will" and that the policy manual imposed no restraints on its right to terminate Palelei's employment, has moved for summary judgment.

### FACTUAL BACKGROUND

While the parties differ on some peripheral factual questions and in their characterizations of the material facts, the material facts themselves are undisputed. Sio Palelei had worked for Star Kist, with one voluntary interruption, since 1981. No mutually signed document set forth the particular employment agreement between the parties, and the parties had specified no duration of the employment. Palelei had, however, like other Star Kist workers, received a commonly distributed "Employee Handbook". This handbook described, among other things, the progressive discipline scheme that Palelei claims was his right. The handbook also enumerates a number of transgressions that could result in the immediate dismissal of the offending employee without resort to progressive discipline.

Star Kist hired Palelei to work in the fish cleaning segment of its operation. It was Palelei's responsibility to supply baskets of fish to employees at the fish cleaning tables. As the fish were cleaned, Palelei was to "punch" cards held by each fish cleaner, each punch representing a certain quantity of cleaned fish. On October 9, 1986, Palelei's immediate supervisor instructed him to increase the rate at which the employees at his table were producing cleaned fish. By both parties' accounts, he did not comply. Palelei asserts that he "maintained the normal routine to avoid overloading the cleaners." Defendant Star Kist, however, speaks of "overpunching" and "insubordination". Though the parties cannot agree on the nature of Palelei's acts that day, neither party disputes that Palelei did not quicken the production pace as he had been told to do by his supervisor. Nor did the punches issued by Palelei record the fact that they were given in accordance with the slower production pace that Palelei deemed more reasonable than the pace prescribed by his supervisor.

The supervisor wrote a warning upon discovering what he perceived as the discrepancy, but Palelei refused to sign it. The supervisor thereupon suspended him and reported the incident to the Star Kist personnel department.

Palelei did not return to the cannery until about four weeks later, when he learned that the company had fired him. In doing so, Star Kist failed to follow the system of progressive discipline it set forth in the employee handbook. This system consists, for each successive offense against "Company policy," of counseling by the employee's supervisor and a verbal warning, written warning with the possibility of a one-day suspension, and finally a "last chance," with the determination to suspend or terminate made in conjunction with the personnel manager.

Plaintiff presses the related arguments that (1) the existence of this progressive discipline scheme provides evidence that the employment relationship was not "at will" and that Defendant could not terminate the relationship without cause, and (2) even if the relationship was "at will," the distribution of an employee handbook providing such a scheme imposed an affirmative contractual restriction on Star Kist's ability to fire him: with or without "cause," defendant was required to

-164-

observe the progressive discipline procedure before terminating the relationship.

## CONCLUSION OF LAW

The common law principle governing termination of an "at will" employee is that, if the parties have neither fixed a definite term of employment nor created any contractual obstacle to the right of discretionary discharge, then the employer may discharge the employee under any circumstances without incurring liability. This rule proceeds from the notion that parties to a contract should have the freedom to construct the contractual arrangement as they see fit and that the courts should not conjure any unbargained obstacles to the ability of either party to terminate the relationship.

The rule can be properly applied, however, only by reference to the understanding that it is a rule of contractual interpretation rather than a substantive "right" of employers, extant unless waived, to terminate employees for an indefinite term without cause. The terms of an employment contract, including those applicable to duration and termination, are to be determined according to the intentions of the parties as evidenced by their oral and written negotiations, the applicable customs and usages, and the circumstances of the transaction. Palelei argues that the employee handbook given to him by Star Kist recites the terms of this contractual relationship governing duration and termination.

While courts of different jurisdictions view the matter differently, there is a mass of authority establishing that the provisions contained in commonly distributed employee manuals can create contractual rights and obligations. See, e.g., Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn. 1983); Toussaint v. Blue Cross & Blue Shield of Mich., 292 N.W 2d 880 (Mich. 1980); Carter v. Kaskasia Community Action Agency, 322 N.E.2d 574 (Ill. App. 1974). This authority directs the court to the policy manual itself and to the circumstances of its distribution in determining whether the terms of the manual became terms of the contract.

Plaintiff suggests no particular circumstances of the distribution of the manual that would require the conclusion that it became a part of the contract between him and his employer. In

<u>Toussaint</u> the employer, in response to a question about job security from Toussaint during the employment interview, handed him a manual asserting the company's "policy" to terminate "for just cause only". 292 N.W.2d at 885. No such circumstantial considerations appear here. A review of the manual itself, however, yields the impression that if ever a policy manual was meant to shape the employee's conduct, this was it. Star Kist's General Manager opens by imploring the reader to review the manual promptly, the sooner to "familiarize yourself with your privileges and responsibilities." Immediately following appears a strongly worded admonition not to join a labor union. The manual then describes the structure and rules of the operation, and the system of progressive discipline that "in appropriate cases . . . will be applied." Finally, the manual contains a signature blank with which the employee, identified by badge number, acknowledges in the presence of a signatory witness that he or she has read the handbook and understands its contents. The Star Kist employee handbook strikes the Court as a careful attempt to elicit particular conduct on the part of employees. Portions of that handbook that appear in return to create rights of the employee, including the progressive discipline section, should be enforced as such.

It is that section itself, however, that defeats Palelei's claim of entitlement to progressive disciplinary measures. The handbook sets out a list of violations justifying termination without resort to progressive discipline. Two of those are (1) "[g]iving or receiving free punches or wrong punches for fish being cleaned" and (2) "[i]nsubordination or willful disobedience to an order, assignment or instruction." Palelei's evidence, viewed in the light most favorable to him, indicates that he did not follow his supervisor's instruction on October 9, 1986, to have his table clean more fish. The handbook clearly permits immediate termination for such conduct, as it does for giving wrong punches. It is one thing for plaintiff to request the Court to enforce as a promise the provision of an employee handbook that looks like a promise. It is quite another to beseech the Court to intrude upon Star Kist's internal operations and to determine (or permit plaintiff to determine) what shall constitute a "wrong punch." Star Kist acted within the boundaries drawn in the employee handbook. There being no genuine issue of material fact

requiring trial, defendant's motion for summary judgment is hereby granted.

It is so ordered.