IVAN CARTER, Plaintiff-Appellee, *v.* THE KASKASKIA COMMUNITY ACTION AGENCY, Defendant-Appellant.

(No. 74-112;

Fifth District—December 20, 1974.

Frank C. Mansfield, of Belleville, for appellant.

Martin J. Corbell, of Vandalia, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Marion County entered on January 24, 1974, after a nonjury trial. The court ordered the defendant to pay the plaintiff the sum of $3760.

The plaintiff brought an action against the defendant, a not-for-profit corporation engaged in the performance of social and human services under programs of the Federal government, based on an alleged violation of a contract of employment. The defendant denied the factual occurrences of any violation and further argued that there is no common law right of the plaintiff to employment and that the employment, being for an indefinite term, was terminable at will, and therefore the plaintiff had no right to action on being discharged.

The plaintiff did not maintain that he was not discharged for cause but rather premised his case on the theory that the defendant had adopted a "Personnel Policy Manual," which thereby became a contract binding on both parties and that the procedures set forth therein were not followed in effecting the complained of discharge.

The defendant argued that this was not a contract and in the alterna-

tive that, even if it were, there had been substantial compliance therewith, such compliance satisfying all reasonable requirements.

The issue presented for review is whether or not the plaintiff was lawfully discharged as an employee of the defendant. We hold that he was illegally discharged and affirm the ruling of the trial court.

The defendant, Kaskaskia Community Action Agency, is a not-for-profit corporation, whose purpose is to improve the lot of the poor by attempting to create job opportunities and develop abilities to take advantage of such opportunities. This is done with the guidance of the Department of Labor and, for the most part, with funds allotted by the U.S. Government. Ivan Carter, the plaintiff, and one Mary Ann Smith, were employed by the defendant agency as "Manpower Director" and "Assistant Manpower Director," respectively, the former having started work in 1967 and Mary Smith in 1968. The employment of the plaintiff by the defendant was terminated on February 14, 1972, and that of Mary Smith on May 22, 1972.

There were no written contracts of employment and no evidence of any oral contracts with reference to tenure. During July of 1971 the executive director of the defendant agency compiled a book of procedures which was entitled "Personnel Policy Manual" (hereinafter referred to as Manual) and reviewed it with the employees, who accepted it. Later it was approved by the board of directors of the agency. Included in the Manual, among many other personnel-type items, are procedures for grievances, disciplinary action including dismissal, and review thereof. The review of a dismissal consisted of the possibility of appeal to the personnel committee and then to the board of directors by an employee who thought his dismissal was not justified. The plaintiff and Mary Smith presented their cases to both of these reviewing bodies. The plaintiff presented his case to the personnel committee and was invited to a meeting of the board of directors, but there was a fact issue decided by the trial court as to whether or not he left the meeting before his case was considered.

The trial court in its decision stated:

"The court cannot substitute its opinion over that of a Board of Directors unless there is a clear and arbitrary unlawful act."

On this basis he determined that there was sufficient compliance with the rules in the case of Mary Smith and that her action should fail. On the other hand, in the case of the plaintiff, the trial court determined "the action of the Board at the meeting of February 14, 1972, was void, illegal and of no force or effect."

It must be decided whether or not the procedures for dismissal set forth in the Manual after being adopted by the board of directors became a

contract binding on both parties. The plaintiff's cause of action is based upon rights supposedly granted by the adoption of the Manual. The plaintiff argues that this Manual became part of the employment contract or, in the alternative, that by its representations the defendant is estopped from denying the plaintiff the rights contained in the policy. Unless the plaintiff acquired some right to a grievance hearing, it would seem that he could be discharged at the will of the employer.

■■ As a proposition of law, the contract must be enforceable by both parties bound to it: *i.e.,* there must be mutuality of obligation. To determine whether there was mutuality of obligation, it is necessary to examine the Manual itself. This document contains provisions concerning both the employer and the employees. It provides that professional employees will be expected to give 30 days' notice before resigning or lose their right to vacation pay. Certain paragraphs provide a method whereby employees would be given grievances procedures; thus, it would appear that there was mutuality of obligation. There seems to be no question that, as far as the capability of the parties to contract is concerned, the Board of Directors adopted the policy contained in the Manual.

The question then becomes whether the plaintiff assented to the proposed modification. It has been determined that, when the term of employment is at the will of the parties, continuing to work not only constitutes assent but also consideration for any modification of the original contract. (*Gishen v. Dura Corporation* (Mass. 1972), 285 N.E.2d 117; *Robinson v. Phillips Petroleum Co.* (1936), 175 Okla. 640, 54 P.2d 322; *Trainer v. Laird* (1936), 320 Pa. 414, 183 A. 40.) Thus, it appears that the plaintiff not only assented to a modification of his contract, but he provided sufficient consideration for that modification, thus creating mutuality of obligation.

Harold Thomas, the former executive director of the defendant, was called under section 60 of the Civil Practice Act and also as a witness for the defendant. He testified that he had prepared the Manual and that the executive director was responsible for all of the staff, subject to consultation with the personnel committee. The board of directors of the defendant agency was responsible for the employment and dismissal of the executive director. Thomas also stated that he turned the plaintiff's case over to the personnel committee, which recommended to the board that plaintiff's employment be terminated. On cross-examination, Thomas testified that grievance procedures were required before a "permanent" employee could be suspended, demoted or dismissed. Thus it can be determined that the Manual became part of the employment contract.

■■ Having established that the Manual was in full force and effect, was the meeting of the board of directors of the defendant agency on

February 14, 1972, so constituted so that the plaintiff had a hearing as requested? According to the plaintiff's testimony, which was contradicted, he was present at the appointed time for the meeting, waited and, when a quorum was not present, departed. Other witnesses testified that plaintiff departed after two representatives were appointed by the executive committee to the board so that all four counties in the organization would be represented at the board meeting, as required by the bylaws. We must examine the bylaws of the defendant corporation to determine whether or not the meeting of February 14, 1972, was lawfully conducted so that it could take the necessary action concerning the charges against the plaintiff.

The bylaws under which the defendant had been operating were adopted in 1969 and provided in article III, section 3:

"Fifty (50%) per cent of the directors shall constitute a quorum for any Board meeting. To constitute a quorum, at least one director from each of the four counties must be present. A majority * * *."

The executive committee of the defendant met on January 18, 1972, and decided to put into effect some revised bylaws, whereby all four counties would not have to be present for a quorum. However, the board of directors of the defendant agency at its next meeting would have to adopt the suggested revision. The next regular Board meeting was held on February 14, 1972. The minutes of that meeting reflect that under the bylaws then in existence, there was no quorum, but it is stated that, "OEO Chicago Legal Authorities authorized the Board of Directors to call an Executive Committee meeting to place two representatives on the Board from Washington County." After this action, it was declared that a quorum was present. Later on during this meeting, the revised bylaws were then formally adopted pertaining to the quorum provision.

Under the bylaws in existence at the time of the February 14, 1972, meeting, there was no provision to fill a vacancy on the board of directors, and article III, section 3, pertaining to a quorum was still in effect and controlling. Section 1 of article VIII of these same bylaws states that the bylaws may be changed if a majority of votes cast at any meeting held for this purpose vote for the change "provided that at least ten days written notice, accompanied by the proposed changes is sent to each director."

■■ There is nothing in the record to demonstrate that the bylaws in effect at the start of the February 14, 1972, meeting were legally revised so that the executive committee were empowered to appoint two representatives from Washington County to the board of directors so as to constitute a quorum. Under the 1969 bylaws there existed no provision

for filling a vacancy on the board of directors, and consequently, any action taken at the meeting could be subject to attack.

Defendant agency in its brief refers repeatedly to plaintiff's exhibit 14 for support in the legality of the meeting on February 14, 1972. Exhibit 14 was the bylaws adopted in 1969 and in effect at the time of the meeting in question. The references that defendant cites are found in plaintiff's exhibit 13, which are the bylaws adopted *during* the meeting of February 14, 1972, and naturally not controlling at the time the February 14 meeting was convened.

■■ Article XXI of the Manual sets out in detail the grievance procedures to be followed in the dismissal, suspension, or demotion of an employee of the defendant. Steps I, II and III were complied with in the plaintiff's case; however, step IV indicates that either party may make a written request to the board of directors for a hearing. The board shall then *conduct a hearing* with *both parties present* and have all written materials and documents pertaining to the grievance in its possession. Plaintiff filed his written request with the board for a hearing. By way of argument, even if a quorum had been present at the meeting, the action of the board in considering the plaintiff's dismissal was hardly in the spirit of what was intended in the Manual for deliberating an employee's case. The official minutes of the meeting point out that the following occurred:

"Richard Seidel made a motion that the full Board accept the recommendation of the Personnel Committee to release Ivan Carter as Manpower Director. Leroy Leith seconded the motion. A roll call was taken and the actions were:

19 Yes
1 No
1 Passed"

There was no showing that any effort was made to call the plaintiff or ascertain if he were present. There was some testimony that at the time of the hearing, plaintiff departed when it was announced that a quorum was not present. This was contradicted. Testimony was presented on behalf of the defendant agency that the plaintiff walked out of the meeting after a quorum was announced. However, the authenticated minutes of the meeting are silent as to the plaintiff's presence or absence when the action was taken. Barbara Perkins, a former secretary for the defendant agency, who prepared and typed the minutes of the February 14, 1972, meeting, testified on cross-examination that "there never was any hearing on Mr. Carter [plaintiff]." However, the court sitting without a jury was the trier of this question of fact and found in favor of the plaintiff.

1062

We, therefore, find that the defendant agency was under a duty as provided in the Manual to grant the plaintiff a lawfully-constituted grievance hearing before he could be dismissed. As this was not accomplished, the judgment of the trial court of Marion County in favor of the plaintiff is affirmed.

Judgment affirmed.

CREBS and EBERSPACHER, JJ., concur.