CRAIN INDUSTRIES, INC. *v.* Kenneth CASS, Lois Marion, Mary Sherman, Victor Knauls, Williams Keith, and David Haywood

90-223                                    810 S.W.2d 910

Supreme Court of Arkansas
Opinion delivered June 3, 1991

*Gilker and Jones*, by: *Michael R. Jones*, for appellant.

*Martin, Vater, Karr & Hutchinson*, by: *W. Asa Hutchinson*, for appellee.

DAVID NEWBERN, Justice. This is a wrongful discharge from employment case. The appellant, Crain Industries, Inc., employed the appellees, Kenneth Cass, Lois Marion, Mary Sherman, Victor Knauls, William Keith, and David Haywood. Due to a reduction in the work force at Crain Industries, those employees were laid off, although they were senior in length of service to some others in their respective departments who were not laid off. The employees claimed breach of contract on the basis of a provision in the Crain Industries employment handbook which provided:

> In the event it should become necessary to reduce the number of employees in the work force, employees will be laid off on a seniority basis by department. The last employee hired would be the first to be laid off. This policy will be adhered to with one possible exception; that is, under circumstances where the efficiency of a department would be impaired by the loss of some particular employee's skill.

It is not argued that any of these employees were laid off because of the need to retain a "particular employee's skill." Crain Industries' main argument is that the employees were "at will" employees, and the language of the handbook quoted above

was "precatory" and insufficient to form the basis of a holding that Crain Industries had contracted not to lay off the employees except in accordance with the handbook. We affirm the judgment based on a jury's finding that Crain contracted to conduct the lay-off in accordance with the provisions of the handbook. Crain raises additional points in which we find no merit, and we will state additional facts as needed to dispose of them.

## 1. Handbook as contract

As to how the handbook came into existence, Kenneth Cass testified as follows:

A. Well, they were trying to form a union, out there at Crain, because of them recently firing a supervisor, and Mr. Crain called a meeting. I think it was the day or the day before we were to take a vote. And he said that we didn't need a union, that if we would vote no to the union, he would come out with a policy that would — guidelines for the employees and the supervisors and Crain Industry, you know.

Q. And was the union voted in or voted out?

A. They were voted out.

Q. And subsequent to that, was the policy manual adopted?

A. Yes.

Cass went on to testify that he was aware of the seniority provisions in the handbook and that the seniority concept was important to him as he remained with the company. Marion, Sherman, Knauls, Keith, and Haywood, also testified of their awareness of the provisions and their expectations that Crain Industries would follow them. The testimony was submitted to the jury which was instructed to find in favor of the employees if the jury found express provisions in the handbook constituting an express agreement. The jury found the express provision an agreement. The Trial Court entered judgment based on that finding.

Generally, the law of this State is that an employer or an employee may terminate an employment relationship at will. In

*Jackson* v. *Kinark Corp.*, 282 Ark. 548, 669 S.W.2d 898 (1984), we recognized that this common law rule was changing in other states which were softening it by finding express or implied agreements for a specified period of employment or by holding that an employer could not discharge an employee arbitrarily or in bad faith. The *Jackson* case was presented to this Court on appeal of a summary judgment in favor of the employer. We remanded so that facts could be developed with respect to the existence and meaning of an employee handbook which Jackson claimed to constitute a contract of employment. We wrote that we would "be in a position to fully consider that trend only after the facts in [the] case [had] been definitely determined." *See also Gaulden* v. *Emerson Electric Co.*, 284 Ark. 149, 680 S.W.2d 92 (1984); *Griffen* v. *Erickson*, 277 Ark. 433, 642 S.W.2d 308 (1982).

In *Gladden* v. *Arkansas Children's Hospital*, 292 Ark. 130, 728 S.W.2d 501 (1987), we dealt with the cases of two employees, each of whom contended she could not be fired by her employer without cause. Each claim was based on statements of the employer made in employment regulations or an employee handbook. We reviewed our cases to date and stated the extent to which we meant to revise the employment at will doctrine. We held the statements in the handbook and regulations were not sufficiently specific to be binding, and thus we sustained the judgments in favor of the two employers. In discussing our willingness to reconsider the employment at will doctrine, we wrote:

> We do . . . believe that a modification of the at will rule is appropriate in two respects; where an employee relies upon a personnel manual that contains *an express provision* against termination except for cause he may not be arbitrarily discharged in violation of such a provision. Moreover, we reject as outmoded and untenable the premise announced in *St. Louis Iron Mt. Ry. Co.* v. *Matthews*, 64 Ark. 398, 42 S.W. 902 (1897), that the at will rule applies even where the employment agreement contains a provision that the employee will not be discharged except for cause, unless it is for a definite term. With those two modifications we reaffirm the at will doctrine. [292 Ark. at 136, 728 S.W.2d at 505]

We thus reaffirmed the employment at will doctrine except where there is an agreement that the employment is for a specified time, in which case firing may be only for cause, or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee.

In *Smith* v. *American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 684 (1991), we were asked, and we declined, to hold this language in an employer's handbook created an enforceable promise to discharge only for cause: "We believe in working and thinking and planning to provide a stable and growing business, to give such service to our customers that we may provide maximum job security for our employees." We held that it did not rise to the level of an "express provision" as the *Gladden* case ruling required.

In the case now before us, there is no contention that the employees were hired for a specified time. The question is thus whether the exception to the employment at will doctrine for a contract arising from a promise made in the handbook, applied. Crain Industries argues that there was no express provision. By comparison with the one we reviewed in the *Smith* case, the provision here is a model of clarity and definiteness. There is no doubt as to its meaning, but the question remains whether it is to be enforced.

Although the handbook in this case did not contain the provision on firing only for cause, the employees contend with respect to the *Gladden* case, "it is clear that the court envisioned a modification of the at-will doctrine in any case in which there was an express provision in the employee handbook governing the procedure at the time of termination."

The trial court did not err in presenting the matter to the jury. In the *Gladden* appeal, where we held for the employers because we could find no specific provision in the employment regulations or manual requiring dismissal to be for cause only, one of the appellants cited *Wagner* v. *Sperry Univac*, 458 F.Supp. 505 (E.D. Pa. 1978). We distinguished the case and stated, "In *Wagner*, a reduction in force was to be governed by seniority in determining who would be laid-off and Wagner's discharge violated that provision." While the holding in the *Gladden* case is

hardly a direct adoption of the *Wagner* decision, we did imply that if there were such a provision in an employment manual it would be enforceable, and that is entirely consistent with our explanation that an exception to the employment at will doctrine may arise from reliance on a promise made in an employment handbook.

The Trial Court was correct in assuming, after studying the *Gladden* decision, that this Court would not hold that clear language constituting a promise not to dismiss other than for cause *would* be upheld but clear language constituting a promise not to dismiss in a lay-off except by departmental seniority *would not* be upheld.

Cases dealing specifically with handbook provisions are collected in Comment, *Unilateral Modification of Employment Handbooks: Further Encroachments on the Employment-at-Will Doctrine*, 139 Penn. L. Rev. 197 (1990). The author points out that unilateral contract analysis is common in handbook cases and quotes the following, omitting citations, from *Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452, 454 (1987).

> [There are] "strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice." . . . It is patently unjust to allow an employer to couch a handbook, bulletin, or other similar material in mandatory terms and then allow him to ignore these very policies as "a gratuitous, non-binding statement of general policy" whenever it works to his disadvantage. Assuredly, the employer would view these policies differently if it were the employee who failed to follow them. . . . If company policies are not worth the paper on which they are printed, then it would be better not to mislead employees by distributing them.

In *Pine River State Bank v. Mettille*, 333 N.W. 2d 622 (Minn. 1983), the Minnesota Supreme Court was apparently confronted with arguments to the effect that provisions in an employment handbook relating to disciplinary action against an employee were unenforceable. A bank employee was fired summarily, allegedly for cause, and the bank president did not follow

the discharge or disciplinary procedures in the handbook. The employee brought an action based on contract and prevailed. The first two issues, as stated by the Court, were as follows: "(1) Can a personnel handbook, distributed after employment begins, become part of an employee's contract? (2) If so, are job security provisions in the handbook enforceable when the contract is of indefinite duration?"

■ Answering the first question in the affirmative, the Court wrote:

> If the handbook language [is sufficiently definite to constitute] an offer, and the offer has been communicated by dissemination of the handbook to the employee, the next question is whether there has been an acceptance of the offer and consideration furnished for its enforceability. In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer. [Footnotes omitted.]

In answer to the second question, also in the affirmative, the Court wrote:

> The argument is that a provision for job security in a contract of indefinite duration, whether initially promised or subsequently added, is not binding without additional, independent considerations other than services to be performed.

***

Handbook provisions relating to such matters as bonuses, severance pay and commission rates are enforced without the need for additional, new consideration beyond the services to be performed. *See* DeGuiseppe, *The Effect of the Employment-at-will Rule on Employee Rights to Job*

*Security and Fringe Benefits*, 10 Fordham Urban L.J. 1 (1981). We see no reason why the same may not be true for job security provisions. *Accord* Note, *Protecting At Will Employees*, . . . 93 Harv. L. Rev. at 1819-20 (employee's continued labor despite freedom to resign is ample consideration for all express or implied promises, including those relating to job security). Thus, the consideration here for the job security provision is Mettille's continued performance despite his freedom to leave. *See, e.g., Carter* v. *Kaskaskia Community Action Agency*, 24 Ill. App. 3d 1056, 1059, 322 N.E.2d 574, 576 (1974). As such, the job security provisions are enforceable.

The Minnesota Supreme Court's opinion on these issues concludes as follows:

Not every utterance of an employer is binding. It remains true that "the employer's prerogative to make independent, good faith judgments about employees is important in our free enterprise system." Blades, *Employment at Will* v. *Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum. L. Rev. 1404, 1428 (1967). Properly applied, we think that the unilateral contract modification analysis appropriately accommodates the interests of the employee and the employer.

The reference to "not every utterance" is apparently to an earlier discussion in the Court's opinion about the sort of vague assurances of "permanency" in employment to which an employer cannot be held, and the sort of vague references we encountered in *Smith* v. *American Greetings Corp., supra.*

■■ The essence of the Minnesota Supreme Court's opinion is like that found in the Pennsylvania Law Review article referred to and quoted above; when an employer makes definite statements about what its conduct will be, an employee has a contractual right to expect the employer to perform as promised. Given our statement in the *Gladden* case that we would regard a specific handbook promise not to discharge except for cause, and given the contract rationale spelled out by these authorities for handbook promises generally, we conclude it was not error to instruct the jury as was done in this case.

## 2. Disclaimer

During the time the employees worked for Crain, the handbook or manual was changed to include this statement:

> The above policies have been explained to me and I have been given a copy of the Company Handbook. I understand that the Company Handbook is *not* a contract of employment and we reserve the right to change it at any time.

The statement appears on a page of the handbook containing a checklist of information to be given a new employee with a place for his or her signature at the bottom and a notation that the form should be placed in the employee's personnel file. Crain argues that it was free to change the handbook by adding the disclaimer. The employees testified they were not aware of the change. Crain did not produce evidence that any of them had signed any such checklist.

Crain cites cases in which it has been held that similar disclaimers were effective. *See, e.g., Eldridge* v. *Evangelical Lutheran Good Samaritan Soc.*, 417 N.W.2d 797 (N.D. 1987); *Castiglione* v. *Johns Hopkins Hosp.*, 69 Md.App. 325, 517 A.2d 786 (1986). In each of them it was evident that the employee in question was aware of the disclaimer. While we might agree that an employer may change the terms pursuant to which its employees remain employed by it, we conclude that if such a change is to be effective it must be communicated to the employee.

Generally a contract cannot be modified unilaterally, *Leonard* v. *Downing*, 246 Ark. 397, 438 S.W.2d 327 (1969); *Scottish Union and Nat. Ins. Co.* v. *Wilson*, 183 Ark. 860, 39 S.W.2d 303 (1931). The pros and cons of permitting an employer to modify a handbook in such a manner as to affect the contractual rights of employees absent additional consideration given to the employees are discussed in the Pennsylvania Law Review note referred to above. We reserve judgment on the question whether, and under what conditions an employer may effectively modify a handbook with notice to affected employees. We find no error in allowing the jury to conclude here that there was no effective modification with respect to these employees.

### 3. Legal opinions of witnesses

The trial court granted a motion in limine by the employees stating witnesses would not be permitted to give their opinion whether the handbook constituted a contract. Crain Industries contends it was error to grant the motion because it prohibited Crain's witnesses from testifying as to Crain's intent in issuing the handbook.

■ The short answer to the argument is that, even if granting the motion had been error, it was not prejudicial because there was such testimony before the jury. Richard Ries, Vice President of Crain Industries, Secretary of the Corporation, a Member of the Board of Directors, and a lawyer, testified, "It has always been our position that this handbook represented the policies of the company, but that it wasn't a contractual commitment by the company."

### 4. Instructions

The trial court gave an instruction to the jury regarding the elements of a contract. It included a statement that there must be a "manifestation of mutual assent to the terms and conditions of the contract." Crain Industries sought to have added, "There can be no contract if only one party intends to be bound." The trial court refused. Crain cites no authority supporting its contention that the trial court should have added those words.

The trial court gave a correct instruction requiring the jury to find "a manifestation of mutual assent to the terms and conditions of the contract." The problem here is caused by an added reference by the trial court to "meeting of the minds." Crain Industries seems to argue that in order to find a contract, the jury would have to have found a subjective intent on the part of the corporation to be bound by the terms of the handbook.

The battle between those who argued for the "subjective theory" and those who argued for the "objective theory" of contract has long since been won by the objectivists. *See* A. Farnsworth, *Contracts*, § 3.6 (1982). As Professor Farnsworth points out, "Discussions of this topic would be improved if this much abused metaphor ['meeting of the minds'] were abandoned." Id., p. 113, n. 2. Although this Court used the metaphor as late as last year, we were careful to point out that we meant, in

more modern terminology, "objective indicator[s] of agreement." *Fort Smith Service Fin. Corp.* v. *Parrish*, 302 Ark. 299, 789 S.W.2d 723 (1990).

■ No real harm was done in this case, as the jury was given an instruction from which it could conclude that it was to determine whether there was evidence that the acts of the parties constituted "indicators of agreement," when it required "a manifestation of mutual assent."

## 5. Mitigation of damages

Crain Industries argues that the evidence is insufficient to support the jury's apparent finding that three of the employees, Cass, Haywood, and Marion, fulfilled their duty to mitigate damages by seeking other employment after the lay-off. It is also argued that the jury's decision in this regard is clearly against the preponderance of the evidence.

Each of the employees in question testified about searching for work after being laid off by Crain. It is argued that Cass, who had been a maintenance supervisor, was given an offer of reemployment in an hourly wage position but refused to accept it because he stated he wanted his old job back rather than the hourly job. Cass testified he searched for other jobs and he attempted to speak to Crain officials on the phone about their offer, but his calls were not returned.

■ Crain contends that employees Haywood and Marion failed to mitigate because they abandoned their job searches after beginning to receive Social Security benefits. Mr. Haywood accepted Social Security disability benefits after searching unsuccessfully for other employment. Ms. Marion, who was 62 years old, testified she "retired" after being consistently refused employment. The question whether she, as well as Cass and Haywood, exercised sufficient diligence in her job search was one of fact for the jury which was properly instructed on the issue. The evidence was sufficient to pose a jury question, and we cannot conclude that the verdict was clearly against the preponderance of the evidence so as to require a new trial. *See* Ark. R. Civ. P. 59(a)(6).

### 6. Attorney's fee

■ An attorney's fee was awarded by the trial court to the employees pursuant to Ark. Code Ann. § 16-22-308 (Supp. 1989). Crain argues the award was erroneous because the provision in the statute that the fee be for "labor or services" applies only to labor or services which have been performed. The argument misses the point that the statute also provides that an attorney's fee may be awarded for "breach of contract." *Barnett v. Arkansas Trans. Co. Inc.*, 303 Ark. 491, 798 S.W.2d 79 (1990).

As the holding of the trial court was that there was an employment contract which was breached, the awarding of an attorney's fee was not improper.

Affirmed.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. Since 1984, this court has wrestled with the idea of abandoning or modifying the employment at will doctrine. *See Gauldin* v. *Emerson Electric Co.*, 284 Ark. 149, 680 S.W.2d 92 (1984), and *Jackson* v. *Kinark Corp.*, 282 Ark. 548, 669 S.W.2d 898 (1984). That common law doctrine provides that when a contract of employment does not bind the employee to serve for a specified time, the contract may be terminated at will by either party, even though the contract provides that the employee can be discharged only for cause. *Gauldin*, 284 Ark. at 151, 680 S.W.2d at 93. While confronted with a number of opportunities since *Gauldin* and *Jackson* to jettison the employment at will doctrine, the court has refused to do so. *Smith* v. *American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991); *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988); *Gladden* v. *Arkansas Childrens' Hospital*, 292 Ark. 130, 728 S.W.2d 501 (1987); *Proctor* v. *East Central Arkansas EOC*, 291 Ark. 265, 724 S.W.2d 163 (1987); *Bryant* v. *Southern Screw Machine Products Co.*, 288 Ark. 602, 707 S.W.2d 321 (1986). However, in *Gladden* the court modified the at will rule in two respects, *viz.*, (1) where an employee relies upon a personnel manual that contains *an express provision against termination except for cause*, he or she may not be arbitrarily discharged in violation of such a provision and (2) an

employment agreement that contains a provision that the employee will not be discharged except for cause is cognizable even if it has an unspecified term. *See Gladden*, 292 Ark. at 136, 728 S.W.2d at 505. With these two narrow changes, the court reaffirmed its adherence to the employment at will doctrine, and later reiterated that reaffirmation in *Smith*, 304 Ark. at 600, 804 S.W.2d at 686. In each of the foregoing cases, this court decided *as a matter of law* either that the employee failed to allege a cause of action for wrongful discharge or that the employee failed in his or her proof on summary judgment to support such an action.

As mentioned in the majority opinion, the employees here based their wrongful dismissal claim on Crain Industries' breach of the following provision in its handbook:

> In the event it should be necessary to reduce the number of employees in the work force, employees will be laid off on a seniority basis by department. The last employee hired would be the first to be laid off.[1]

The above provision contains no language expressing that the employees cannot be discharged except for cause. The provision provides only that, if a reduction in work force is necessary, employees will be laid off on a seniority basis. Without an express provision against termination except for good cause, Crain Industries clearly reserved its authority to fire any employee for any reason.

Actually, the earlier *Gladden* decision presented a much closer case on its facts to uphold a wrongful discharge action than the situation here. In *Gladden*, the employees' manual contained provisions describing methods for dismissal under certain circumstances and specified different kinds of conduct that could result in summary dismissal. Even so, because the manual did not expressly provide that employees would not be discharged except for cause, this court held as a matter of law that the manual afforded the employee no basis for a wrongful discharge action.

I would point out that, in all of the manual or handbook employment at will cases cited above and of which I have

---

[1] One exception to this policy statement was added, but it is not relevant in this appeal.

knowledge, this court has never held that a wrongful discharge action was alleged or a claim was established or that a jury question existed. If such an action or claim exists here, no doubt such a factual question existed in *Gladden.*

In conclusion, I would add that I have sympathy for· the employees' beliefs that their employer should have complied with its stated policy set out in the company's handbook when a work force reduction became inevitable. Nonetheless, that is not the issue posed here. The majority's opinion, in my view, simply runs contrary to this court's prior decisions, and I fear will prove to be the source of considerable confusion in employment at will cases in the future.

I respectfully dissent.

CORBIN, J., joins this dissent.