Charles PEARSON, Plaintiff,

v.

CITY OF PARIS and Charles Ford, individually and in his official capacity, Defendants.

Civ. No. 93–2082.

United States District Court, W.D. Arkansas, Fort Smith Division.

Dec. 2, 1993.

Gregory T. Karber, Pryor, Barry, Smith, Karber & Alford, Fort Smith, AR, for plaintiff.

Mark R. Hayes, North Little Rock, AR, Billy G. Stockton, City Atty., Paris, AR, for defendants.

## MEMORANDUM OPINION AND ORDER

H. FRANKLIN WATERS, Chief Judge.

On this 1st day of December, 1993, comes now before the court for consideration a motion for summary judgment filed by the defendants, City of Paris and Charles Ford. Also before the court for consideration is the response to that motion filed by the plaintiff, Charles Pearson, as well as defendants' supplemental motion for summary judgment and plaintiff's response to the supplemental motion. The court has considered the pleadings and is now ready to rule. For the reasons set forth below, the court finds that the motion should be and hereby is granted in part and denied in part.

Plaintiff has brought two claims pursuant to 42 U.S.C. § 1983. In Count One, plaintiff contends that he was employed as Chief of Police for the City of Paris, Arkansas, since

January 19, 1992[1] and that the personnel policies of the City of Paris and the laws of the State of Arkansas gave plaintiff a property interest in his continued employment as Chief of Police. Plaintiff contends that thereafter on March 11, 1993, his employment was suspended by defendant Charles Ford and a due process hearing was scheduled for April 23, 1993. Plaintiff further contends that he was refused proper participation in the hearing and therefore plaintiff's property interest in his continued employment was taken by the City of Paris without due process in violation of the Fourteenth Amendment.

In Count Two, plaintiff contends that after his suspension, the defendants and other city officials made comments and statements which were published by the media. Plaintiff asserts that these comments and statements were stigmatizing to plaintiff and have deprived plaintiff of his liberty interest without due process in violation of the Fourteenth Amendment.

Finally, in Count Three, plaintiff contends that defendants conspired to deny plaintiff his civil rights in violation of 42 U.S.C. § 1985. Plaintiff alleges that prior to the April 23, 1993 hearing, defendant Ford solicited favorable votes from members of the city council against the plaintiff. Plaintiff contends that solicitation of votes prior to a due process hearing constituted a conspiracy to deprive plaintiff of his property and liberty interests without due process and in violation of § 1985.

Defendants have now filed a motion for summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied.

The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that prop-

erly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also AgriStor Leasing v. Farrow*, 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Industry Union—Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986).

The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The Court has recently reviewed the burdens of the respective parties in connection with a summary judgment motion. In *Counts v. M.K.–Ferguson Co.*, 862 F.2d 1338 (8th Cir.1988), the court stated:

[T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, '[to] point[ ] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339, *quoting, City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

However, the Court of Appeals for this circuit has also held that the court, in ruling on the motion for summary judgment, must give the non-moving party "the benefit of the reasonable inferences that can be drawn

---

1. The court believes that this date should be    January 19, 1991.

648

from the underlying facts." *Fischer v. NWA, Inc.*, 883 F.2d 594, 598 (8th Cir.1989) (*citing Trnka v. Elanco Products*, 709 F.2d 1223 (8th Cir.1983)).

## A. Property Interest

■ Defendants first contend that plaintiff enjoyed no property interest in his continued employment as Chief of Police of the City of Paris. Defendants contend that plaintiff had no legitimate claim of entitlement to his employment but rather was an employee at-will in accordance with Arkansas law and the Personnel Policy Handbook. Furthermore, defendants contend that plaintiff had neither a written contract nor an oral representation from the city council that he was being hired for a specific time period or that he could be removed from his position only for "cause." Thus, defendants contend that plaintiff's argument of continuing employment was nothing more than a unilateral expectation not rising to the level of a constitutionally protected property interest.

Plaintiff has cited in response to this argument a provision of the Arkansas Code which provides in pertinent part:

(2) Mayors shall have the power to choose and appoint the chief of the police department and chief of the fire department, who shall hold office until the following election for mayor, and until a successor is appointed by the incoming mayor, unless sooner removed for cause;

Ark.Code Ann. § 14–43–504 (1989). The provision continues, setting forth specific reasons for which the chief may be removed for cause including "inefficiency, misconduct, or neglect of duty...." Plaintiff argues, therefore, that this statute supersedes local personnel provisions, creates a term of employment for two years, and provides that the chief of police can be discharged only for "cause," thus forming an exception to Arkansas' employment at-will doctrine. Plaintiff contends that defendants have recognized the applicability of these provisions when stating in plaintiff's suspension letter that "[t]his letter is to notify you that pursuant to Ark.Code Ann. 14–43–504 that you are hereby suspended, effective immediately, from your duties as the Chief of Police of Paris, Arkansas." Plaintiff argues, therefore, that

as plaintiff's term of employment was for two years and as plaintiff could be removed only for "cause," plaintiff enjoyed a property interest in his continued employment as an exception to the at-will doctrine. Plaintiff further contends that this interest was deprived without due process of the law and therefore, defendants' motion should be denied.

Defendants then filed a supplemental motion for summary judgment in which they addressed plaintiff's argument that Ark.Code Ann. § 14–43–504 creates substantive employment rights. Defendants argue that the statute is a grant of restricted power to the mayor as opposed to a grant of rights and privileges to the chief of police. Rather than granting a property interest to the police chief, defendants contend that these statutes simply set out the procedure which must be followed in order to discharge the chief of police. Thus, defendants refute plaintiff's argument that the statute creates a substantive employment right or an exception to the at-will doctrine.

Alternatively, defendants contend that even if plaintiff had a property interest in his continued employment as chief of police, plaintiff was given due process prior to his termination. As an employee with a property interest in his continued employment is entitled only to notice and a hearing rather than a full trial on the merits, defendants assert that the pretermination hearing held on April 32, 1993 was sufficient to satisfy procedural due process requirements. Defendants contend that plaintiff was given notice of the grounds for his suspension and subsequent termination in the suspension letter and packet sent to him by defendant Ford, that plaintiff was given an explanation of the grounds for his termination at the hearing and that plaintiff was afforded an opportunity to present his side of the story at the hearing where he was represented by counsel. Defendants also contend that due process does not require an opportunity for full cross-examination of witnesses testifying at pretermination hearings as plaintiff argued.

Plaintiff responded to defendants' supplemental motion, simply contending that genu-

ine issues of material fact exist with respect to the property interest claim and providing to the court plaintiff's affidavit and suspension letter, various copies of newspaper articles and a transcript of the Paris city council meeting held on April 23, 1993.

█ To have a property interest in employment a person must have a legitimate claim of entitlement to employment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The mere fact of public employment does nor create a protected property interest; rather, protected property interests are established by state law. *Greeno v. Little Blue Valley Sewer Dist.,* 995 F.2d 861, 864 (8th Cir.1993). "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Typically, the property interest arises from contractual or statutory limitations on the employer's ability to terminate the employee. "When such a property interest exists, the employee is entitled to a hearing or some related form of due process prior to termination." *Blankenbaker v. McCook Public Power Dist.,* 940 F.2d 384, 385 (8th Cir.1991), citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Specifically, the employee has a right to be given an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

█ Arkansas long has adhered to the employment at-will doctrine. A contract for an indefinite term is terminable at will for any reason or for no reason as long as the termination is not otherwise unlawful. *Gladden v. Arkansas Children's Hospital,* 292 Ark. 130, 728 S.W.2d 501 (1987). An employment contract for a specified time, however, may only be terminated for cause. *Crain Indus., Inc. v. Cass,* 305 Ark. 566, 571, 810 S.W.2d 910 (1991).

Defendants argue that plaintiff had no protected interest in his continued employment because plaintiff was an employee at-will.

The Personnel Policy Handbook for the City of Paris, Arkansas, provides that the city is an at-will employer, meaning that the city or city employee may terminate the employment relationship at any time for any reason. The Handbook specifically provides that police officers are at-will employees. The Handbook further provides that "[n]o policies, comments, or writings made herein or during the employment process shall be construed in any way to waive this provision."

In opposition, plaintiff contends that an Arkansas statute creates a property interest in his continued employment as the Chief of Police for the City of Paris, Arkansas:

> (e) The mayor of any city of the first class shall, in addition to the powers and duties already pertaining to that office, be clothed with, and exercise and perform, the following:
>
> \*   \*   \*   \*   \*   \*
>
> (2) Mayors shall have the power to choose and appoint the chief of the police department and chief of the fire department, who shall hold office until the following election for mayor, and until a successor is appointed by the incoming mayor, unless sooner removed for cause;
>
> (3)(A)(i) The mayor shall have the right to suspend for inefficiency, misconduct, or neglect of duty the chief of the police department and chief of the fire department until the next regular, adjourned, or special meeting of the council.
>
> (ii) At that meeting, he shall lay the matter before the council. Unless his action is approved and the chief is removed from office at the meeting within five (5) days thereafter, by a vote of a majority of the council-elect, the suspension shall cease.
>
> (B) No officer shall be suspended twice for the same cause.

Ark.Code. Ann. § 14–43–504(e)(2)–(e)(3)(B) (1987). Plaintiff contends that this statute supersedes the provisions of the employee handbook relating to at-will employment of the chief of police.

The court believes that § 14–43–504 creates a property interest in the chief of police

position for any city of the first class by providing for a term of employment, from the date of appointment to the following mayoral election, and by providing for removal only for cause. A city of first class is defined by Ark.Code Ann. § 14–37–103 (1987) as a "municipal corporation[] having over two thousand five hundred (2,500) inhabitants." The court finds that the municipality of Paris, Arkansas, is a city of the first class as the 1990 census reports a population of approximately three thousand six hundred (3,600) inhabitants. Thus, plaintiff enjoyed a property interest in his continued employment as the chief of police for the city of Paris, Arkansas, as provided by § 14–43–504.

■ Finding that plaintiff enjoyed a property interest in his continued employment as the chief of police for the City of Paris, Arkansas, the court believes that a genuine issue of material fact remains as to whether the plaintiff received due process when his employment was terminated. The court believes that counsel for plaintiff, during his examination of defendant Ford at the April 23, 1993 hearing, has raised a genuine issue of material fact regarding the date on which employee evaluations, dated October 21, 1992, were actually completed by employees of the City of Paris Police Department. Furthermore, the deposition of defendant Ford supports the plaintiff's allegations that Ford met or talked with members of the city council prior to the hearing on April 23, 1993, discussing plaintiff's suspension from the police department. Additionally, plaintiff's affidavit has been submitted in which plaintiff affirms that

> [i]t is my information and belief that members of the town council of the City of Paris discussed the allegations against me with the Mayor of the City of Paris, Arkansas, and specifically discussed the manner in which they would vote at the "hearing" that was scheduled. It is my information and belief that the town council and the Mayor agreed prior to the meeting that the council members would vote against my employment as Chief of Police,

and decided to do so without having heard my side of the story.

The court also believes that there is genuine issue pertaining to whether plaintiff's removal was for "cause," defined by statute in this instance to be "inefficiency, misconduct, or neglect of duty." Thus, the court finds that summary judgment on plaintiff's property interest claim is precluded.

### B. Liberty Interest

■ Defendants then contend that there has been no violation of plaintiff's liberty interest as plaintiff has not claimed that stigmatizing reasons implicating his good name, reputation, honor or integrity formed the basis for his termination or were ever communicated to him as a basis for his termination or were communicated to a third party making it difficult for plaintiff to acquire new employment. Defendants contend that the reasons which were communicated as forming the basis of plaintiff's suspension concern only plaintiff's performance on the job and not his reputation, morality, good name or propensity for honesty or dishonesty. Defendants further contend that there is no evidence that stigmatizing reasons concerning plaintiff's reputation, morality, good name or propensity for honesty or dishonesty were ever communicated by defendants to a third party. Thus, defendants seek summary judgment on plaintiff's liberty interest claim.

In his response, plaintiff contends that he was discharged under circumstances which created a stigma, specifically the disparaging and untrue statements released by city officials and published by the various media which impede his freedom and ability to seek other employment. Plaintiff argues, therefore, that he was entitled to a due process hearing which was not provided.[2] Plaintiff also contends that he has alleged "publicly stigmatizing remarks" by defendants and others "which were published by the media" and were untrue. Plaintiff contends that nothing more is required to state a claim for deprivation of a liberty interest and that

---

**2.** Acknowledging that a "meeting" was held, plaintiff argues that it did not constitute a due process hearing. Plaintiff also contends that nei-

ther pre-termination nor post-termination due process was provided to plaintiff.

defendants' arguments to the contrary are unfounded.

Plaintiff then contends that the allegations of "harassment" are sufficiently stigmatizing to create a question of fact as to whether the allegations have had a stigmatizing effect upon plaintiff's ability to acquire other employment. Plaintiff argues that defendant Ford's claims that plaintiff was not "trustworthy," was "inefficient" and showed "favoritism," made to the public at the April 32, 1993 "hearing," were also sufficiently stigmatizing to create an issue of fact on plaintiff's ability to find other employment. Additionally, media reports characterizing plaintiff's tenure as a "nightmare" and as "turmoil" also hindered plaintiff's ability to locate other employment.

Moreover, plaintiff contends that defendant Ford's refusal to submit to confrontation and cross-examination by plaintiff's counsel at the April 23 hearing violated plaintiff's due process rights. Furthermore, plaintiff contends that he was being publicly stigmatized while supposedly receiving his due process hearing.

In their supplemental motion, defendants contend that the statement that plaintiff was "harassing" employees should not be taken out of context. Defendants assert that the statement that employees were being harassed in the course of their duties meant that the plaintiff was generally annoying them and preventing them from carrying out their duties to the best of their ability. Defendants contend that this interpretation is clearly supported by a review of the facts of this matter. Defendants reassert that plaintiff was accused only of not performing his job and one of his failures in that regard was agitating, annoying, badgering, browbeating and pestering his employees to the point that they could not perform their given tasks. As a result, defendants contend that a personality conflict was created within the department which supported the termination of plaintiff. Defendants argue, however, that use of the word "harassment," in context as applied to the plaintiff, did not allege sexual harassment, racial harassment, or criminal harassment which might give rise to a liberty interest claim. Defendants contend, therefore, that nothing publicized about defendant indicated anything other than the way in which plaintiff maintained the police department; there were no accusations of criminal or immoral behavior on behalf of plaintiff.

Alternatively, defendants contend that even if plaintiff did suffer a liberty interest violation, plaintiff was provided ample procedural due process, including an opportunity to clear his name, and therefore, plaintiff's liberty interest claim should be dismissed. Plaintiff's response to defendants' supplemental motion for summary judgment simply contends that genuine issues of material fact exist with respect to plaintiff's liberty interest claim.

■ A government employee is entitled to procedural due process in connection with his discharge when he is deprived of a constitutionally protected liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). "To establish protected liberty interests, plaintiffs were required to establish that a city official, in connection with discharging the plaintiffs, publicly made allegedly untrue charges against them that would stigmatize them so as to seriously damage their standings and associations in their community, or foreclose their freedom to take advantage of other employment opportunities." *Shands v. City of Kennett,* 993 F.2d 1337, 1347 (8th Cir.1993). In *Shands,* the court further noted:

> An employee's liberty interest is implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges. The requisite stigma has generally been found in cases in which the employer has accused the employee of dishonesty, immorality, criminality, racism or the like.

*Id.* (citations omitted).

On July 20, 1992, plaintiff received a letter from defendant Ford which stated, *inter alia,* that plaintiff

> should not harass or bother the employees of the City of Paris over minor details. If you believe that an employee is not per-

forming properly, then you should meet with that employee and correct the problem. However, if the employee is performing properly and providing proper job performance, you should let that employee perform without undue harassment.

Thereafter, in a letter dated March 11, 1993, plaintiff was notified by defendant Ford that he was being suspended, pursuant to Ark. Code Ann. § 14–43–504, for the following reasons:

(A) Inefficiency in your duties as Chief of Police; (B) Your inability to motivate the City of Paris Patrolmen; (C) Poor morale in the Paris Police Department; (D) Your inability to cooperate with other law enforcement agencies; [and] (E) Harassment of City of Paris Police Department employees during the course of their duties.

Then, on April 23, 1993, at 7:00 p.m., a city council meeting was held at the Paris City Hall in which plaintiff's suspension as chief of police was the focus of attention. The Paris city attorney, Bill Stockton, was in charge of the council meeting. The mayor, defendant Ford, made an opening statement of the charges against the plaintiff and then a packet of information, consisting of employee evaluations, statements and letters, was given to each of the council members. The packet was then read by each of the council members after which defendant Ford asked the council to terminate plaintiff's employment.

Counsel for plaintiff then attempted to examine defendant Ford regarding plaintiff's suspension and the evidence against plaintiff in support of his suspension and impending termination. However, the transcript indicates that defendant Ford refused to cooperate with plaintiff's counsel, particularly when plaintiff's counsel inquired about the existence of various documents upon which the decision to suspend plaintiff allegedly was based. Counsel then examined the plaintiff, who related his beliefs with respect to his suspension including the fact the various employee evaluations dated October 21, 1992, had never been presented to plaintiff nor was plaintiff aware of their existence until the date of his suspension. Counsel then conducted a brief examination of plaintiff's wife

after which a brief closing statement was made. The city council thereafter went into executive session and voted unanimously to terminate the plaintiff's employment.

While the court has some doubt that plaintiff will prevail on his liberty claims, in particular with respect to the alleged "harassment," the court believes that there are genuine issues of fact which preclude the entry of summary judgment at this point. During the council meeting, defendant Ford made the following statement in an audience of 50–100 persons, including representatives of the media: "The employees of the Paris Police Department do not trust Chief Pearson." Clearly, this reflects on the plaintiff's propensity for honesty or dishonesty. Additional reasons publicized for plaintiff's termination including allegations that plaintiff's tenure was a "nightmare," that plaintiff showed "favoritism," that plaintiff's employment was "turmoil," that plaintiff was "inefficient," that plaintiff does not "cooperate with other law enforcement agencies," that plaintiff refers to his employees as "pagan worshippers," and that plaintiff allows his religious beliefs to interfere with his work certainly create an issue of fact as to whether or not plaintiff's ability to find other employment has been hindered. Thus, the court finds that defendants' motion for summary judgment should also be denied on plaintiff's liberty interest claim.

## C. Conspiracy to Violate Civil Rights

Defendants' next argument is that plaintiff cannot establish the required elements of a prima facie conspiracy to violate civil rights claim. Defendants contend that plaintiff must establish the following to prevail: (1) That the defendants conspired; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the law; (3) that one or more of the conspirators did or caused to done any act in furtherance of the object of the conspiracy; (4) which caused injury to any person or his property or deprived him of having and exercising any right or privilege of a citizen of the United States. Defendant's Brief in Support of Motion for Summary Judgment, p. 10, citing *Griffin v.*

*Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99; 29 L.Ed.2d 338 (1971); *City of Omaha Employees Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 652 (8th Cir.1989).

Defendants argue that the plaintiff must present sufficient and specific facts which would suggest that the defendants reached an understanding or meeting of the minds to violate plaintiff's civil rights. Defendants contend, however, that plaintiff has produced no evidence that defendants conspired to do anything at all, much less conspired to deprive plaintiff of his civil rights. Additionally, defendants contend that as plaintiff has failed to present evidence of an underlying constitutional claim, there can be no claim for conspiracy to violate plaintiff's constitutional rights. Thus, defendants also seek summary judgment on plaintiff's conspiracy to violate civil rights claim.

Plaintiff has not responded to defendants' argument on the conspiracy claim. In their supplemental motion, defendants contend that plaintiff's failure to respond is a concession that plaintiff does not have a viable conspiracy claim. Plaintiff's response to defendants' supplemental motion merely contends that genuine issues of material fact remain including the existence of a conspiracy to deny proper due process to plaintiff and whether or not the plaintiff ever received due process.

■ The court believes that defendants' motion for summary judgment should be granted on this claim. The "purpose" element of a conspiracy claim under § 1985 requires that the plaintiff prove a class-based "invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102 & n. 10, 91 S.Ct. 1790, 1798 & n. 10, 29 L.Ed.2d 338. Plaintiff has made absolutely no demonstration of an invidious, class-based, discriminatory motivation. Plaintiff is also required to allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. Again, plaintiff has failed to meet this burden. For these reasons, the court is granting defendants' motion for summary judgment on plaintiff's § 1985 claim.

### D. Qualified Immunity

■ Defendant Ford's final argument is that he is entitled to qualified immunity as a "government official performing discretionary functions." Defendant Ford contends that his alleged unlawful actions meet the test of "objective legal reasonableness" and therefore defendant Ford is immune from liability.

■ The test for qualified immunity is an objective one: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This standard imposes liability only for violations of clearly settled law which a defendant, in the absence of extraordinary circumstances, had a duty to know. *Id.* at 818–19, 102 S.Ct. at 2738–39. The test, therefore, is the "objective legal reasonableness of an official's acts ...," *Fields v. Omaha,* 810 F.2d 830, 834 (8th Cir.1987), in light of the legal rules that were "clearly established" at the time action was taken. *Anderson v. Creighton,* 483 U.S. 635, 637, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). If the plaintiff alleges facts that demonstrate a constitutional violation, a court may determine, at the summary judgment stage, whether the alleged conduct violated clearly established law of which a reasonable official would have known. *Warren v. City of Lincoln,* 816 F.2d 1254 (8th Cir.1987), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). Once a court determines as a matter of law that a legal standard governing the governmental action at issue was clearly established, there is no qualified immunity. *Id.* The factual question whether the official's conduct violated the established constitutional standard is resolved by the trier of fact. *See Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

■ The defendant has the burden of proving qualified immunity by a preponderance of the evidence and the presence of qualified immunity is a question of law for

**654**

the court. *Buffkins v. Omaha,* 922 F.2d 465 (8th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991). The doctrine of qualified immunity, however, applies only to a § 1983 damages action against the government official in his *individual capacity* and not in his *official capacity.* Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation, The Law of Section 1983* § 6.16 at 488 (1991).

Defendant Ford has been named in both his official and in his individual capacity. Thus, the issue of qualified immunity is only relevant to the action against defendant Ford in his individual capacity. As the court believes that the plaintiff has alleged facts demonstrating a constitutional violation and therefore, the court is required to determine whether the alleged conduct violated clearly established law of which a reasonable official would have known. The court finds, as a matter of law, that a legal standard governing the governmental action at issue was clearly established on April 23, 1993, at which time the plaintiff was terminated from his employment. Provisions of the Arkansas Code cited in pertinent part above governed the suspension and termination of plaintiff's employment at the time of the alleged unlawful action on part of defendants. Furthermore, the requirements of constitutional due process in connection with plaintiff's suspension and termination from employment were also clearly established and were such that a reasonable official should have been aware. Thus, the court finds that defendant Ford is not entitled to qualified immunity. The factual question of whether defendant Ford's conduct violated the established constitutional standards remains for resolution at trial. Thus, the court finds that summary judgment should be denied on the issue of qualified immunity.

### Conclusion

In summary, the court finds that summary judgment should be and hereby is denied on plaintiff's property interest and liberty interest claims brought pursuant to 42 U.S.C. § 1983. Summary judgment should be and hereby is granted for defendants on plaintiff's civil rights conspiracy claim brought pursuant to 42 U.S.C. § 1985. And finally,

the court believes that summary judgment should be and hereby is denied on defendant Ford's claim of qualified immunity.

IT IS SO ORDERED.