**Mary McCLENDON, Plaintiff,**

v.

**SHERWIN WILLIAMS, INC. and Don McKenzie, District Manager, As An Agent on Behalf of Sherwin–Williams Company, Defendants.**

**No. LR–C–98–0568.**

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 15, 1999.

---

**35.** Owen's influential article is cited as "persuasive" in *Wangen*, 97 Wis.2d at 290, 294

N.W.2d 437.

Alvin Leonard Simes, Attorney at Law, Forrest City, AR, for Mary McClendon, plaintiff.

Kathlyn Graves, Don S. McKinney, Wright, Lindsey & Jennings, Little Rock, AR, for defendants.

## ORDER

STEPHEN M. REASONER, District Judge.

Pending before the Court is defendants' motion for summary judgment and/or alternative motion to compel arbitration.

Plaintiff filed this action alleging age discrimination.[1] Defendants filed their motion for summary judgment alleging that defendant Sherwin–Williams Company ("Sherwin–Williams") has an employee handbook, the Problem Resolution Procedures ("PRP")—Employee Relations Guiding Principles Employee Handbook, which provides for arbitration in discrimination cases, with the results being final and binding on both parties. Defendants state that the PRP was distributed in January, 1996 and made available to all employees including plaintiff. The PRP provide that continued employment at Sherwin–Williams after their adoption in January, 1996, signifies an agreement to resolve all legal claims against Sherwin–Williams through the method set forth by the PRP rather than through the court system. Plaintiff remained an employee with Sherwin–Williams until her termination on June 24, 1997, past the effective date of the adoption of the PRP. Defendants argue that the Federal Arbitration Act ("FAA") governs the agreement to arbi-

---

1. Plaintiff alleged she had been terminated due to her age but her complaint erroneously invoked federal jurisdiction pursuant to Title VII rather than the Age Discrimination in Employment Act ("ADEA"). Plaintiff subsequently moved to amend the complaint to correct the error.

trate and that arbitration agreements have been upheld by the United States Supreme Court and the Eighth Circuit Court of Appeals.

The FAA provides that written agreements to resolve controversies by arbitration "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. The United States Supreme Court has recognized that the FAA embodies broad federal policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225–226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

■ In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court held that a claim under the Age Discrimination in Employment Act ("ADEA") can be subjected to compulsory arbitration. The defendant employer had argued that the claim was subject to compulsory arbitration pursuant to a written agreement set forth in its securities registration application. The Court held that the party opposing arbitration has the burden of showing that Congress has barred any waiver of judicial remedies and "intended to preclude arbitration of claims under the act." *Id.* at 35, 111 S.Ct. 1647. Noting that nothing in the ADEA evidenced such an intent, the Court compelled arbitration of Gilmer's claim.

■ The Eighth Circuit addressed the arbitration issue in the context of Title VII and Missouri state law in *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (1997). The first issue the Court addressed was whether the parties agreed to arbitrate. The Court stated that, "[u]nder the FAA, ordinary contract principles govern whether parties have agreed to arbitrate, principles that in this case are derived from Missouri law." *Id.* at 834. The Court noted that under Missouri law, employee handbooks were not considered contracts and that "a contract is only formed with the traditional elements of offer, acceptance, and consideration." *Id.* at 835. The Court in *Patterson* concluded that the arbitration clause was separate from the other provisions of the handbook and that it constituted an enforceable contract. Specifically, the Court found that the arbitration clause was (1) separate and distinct; (2) was set forth on a different page and introduced by a separate heading in bold type; (3) had to be signed and was then removed from the handbook and stored in the employee's file; and (4) had a marked transition in tone and language from that used in other portions of the handbook. The Court concluded that "the difference in language used in the handbook and that employed in the arbitration clause would sufficiently impart to an employee that the arbitration clause stands alone, separate and distinct from the rest of the handbook." *Id.*

■ In Arkansas, the Supreme Court has reaffirmed the employment at will doctrine "except where there is an agreement that the employment is for a specified time, in which case firing may be only for cause, or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee." *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 570, 810 S.W.2d 910 (1991). In *Crain*, the Arkansas Supreme Court relied on a Minnesota Supreme Court case to answer the following question: "Can a personnel handbook, distributed after employment begins, become part of any employee's contract?" *Id.* at 573, 810 S.W.2d 910. The Minnesota Court wrote:

If the handbook language [is sufficiently definite to constitute] an offer, and the offer has been communicated by dissemination of the handbook to the employee, the next question is whether there has been an acceptance of the offer and consideration furnished for its enforceability. In the case of unilateral contracts for employment, where an at-will employee retains employment with knowl-

edge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration of the offer. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–27 (Minn.1983). The Court in *Crain* then stated that "handbook provisions relating to such matters as bonuses, severance pay and commission rates are enforced without the need for additional, new consideration beyond the services to be performed." *Crain* at 574, 810 S.W.2d 910. The Court held that the consideration for the job security provision was the employee's continued performance despite his freedom to leave.

■ The arbitration procedures in this case are set forth in a handbook entitled "Problem Resolution Procedures; Employee Relations Guiding Principles; Employee Handbook." Sherwin–Williams explains in the introduction that the booklet was developed to detail the company's expectations for all employees. It then explains that it hopes all employee disputes can be resolved "in-house" but notes that for those situations involving discrimination or appeal of a termination that cannot be resolved in-house, Sherwin–Williams has adopted a private, professional way outside the company to settle the disputes involving either mediation and/or arbitration by the American Arbitration Association ("AAA"). The remainder of the booklet is devoted to explaining, in detail, the arbitration/mediation procedures. The booklet only deals with employee relations. It does not address sick leave, vacation time, employment hours, bonuses, or other employment issues one might expect to find in an employee handbook. The PRP were distributed and made available to all employees of Sherwin–Williams including plaintiff. The Court finds that the handbook language was sufficiently definite to constitute an offer. The offer was communicated to employees by dissemination of the handbook. Plaintiff accepted the PRP by choosing to remain an employee with Sherwin–Williams after having received the employee handbook and by continuing to stay on the job, plaintiff supplied the consideration for the offer.

Plaintiff also argues that even if the arbitration agreement was offered and accepted, it is an adhesion contract because plaintiff is in an unfair bargaining position. The court notes again that the PRP provides that the results of arbitration are final and binding on *both* the company and the employee. Thus, in addition to plaintiff supplying consideration for the contract by her continued employment, plaintiff also received consideration in the form of defendant's foregoing its judicial remedies. Plaintiff has not pointed to any factual basis which could sustain a finding that "the bargaining power of the parties was wholly unequal" or which could give rise to a conclusion that the contract was one of adhesion. *McLarty Leasing System, Inc. v. Blackshear,* 11 Ark.App. 178, 668 S.W.2d 53 (1984).

It is, therefore ORDERED that defendants' motion for summary judgment and/or alternative motion to compel arbitration is granted and plaintiff's complaint is dismissed with prejudice.

SO ORDERED.